## S. ROSSIN & SONS, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### FLEISHMAN'S ESTATE v. SAME.
#### Nos. 326, 327.

Circuit Court of Appeals, Second Circuit.
July 18, 1940.

Harry J. Leffert, of New York City (Cohen, Cole, Weiss & Wharton and Howard A. Seitz, all of New York City, of counsel), for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Newton K. Fox, Sp. Assts. to Atty. Gen., for respondent.

Before SWAN, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

SWAN, Circuit Judge.

The ultimate question presented is whether the corporation realized taxable income in its fiscal year ending April 30, 1936 by transferring on its books a reserve for bad debts to a liquidation account and distributing its assets to its sole stockholder. By a majority of nine members to seven the Board held that it did.

There is no dispute as to the facts. S. Rossin & Sons, Inc., was incorporated in 1922. Its books were kept upon the accrual basis. In the tax return for its first fiscal year it elected to use the reserve method of accounting and deducting for bad debts, as permitted by section 234(a) (5) of the Revenue Act of 1921, 42 Stat. 255. Charges and credits to the reserve were made annually on the books of the corporation up to and including the fiscal year ending April 30, 1927. Additions to this reserve were annually allowed as deductions on its returns for those years. No further credits or charges to the reserve were made thereafter. The amount of the reserve remained at $27,352.09 from April 30, 1927 to April 30, 1936, when the reserve was closed out to a liquidation account and distributed to the Fleishman Estate. The corporation was dissolved March 28, 1936. For the year ending April 30, 1928, it claimed no deduction for bad debts, either by addition to its bad debt reserve or by charging off specific debts ascertained to be worthless. This was likewise true of the years 1933 and 1936. But in each of the other years subsequent to 1928 its returns showed deductions for bad debts on account of specific debts ascertained to be worthless and charged off as such. The corporation

never filed an application for permission to change from the reserve method of accounting for bad debts and no permission to change was ever granted by the commissioner, nor any notice of any proposed change given to him, except in so far as it may be judicially determined that the accepted returns filed subsequent to 1928 constituted such application, notice and permission. The Board made a finding that the commissioner examined the returns and the books for those years and knew that the corporation was no longer using the reserve method but was using the other method allowed by the statutes. The report, dated January 28, 1930, of a revenue agent who investigated the return for the year ending April 30, 1929, contains the statement: "Loss on bad debts was found correct and has been allowed. Reserve method not used." Thereafter the commissioner agreed upon an overassessment for that year in the computation of which no change was made in regard to the deduction for bad debts. The accounts and notes receivable on the corporation's books on April 30, 1927 were all paid in full prior to February 1, 1929.

In determining the deficiency for the year 1936, the commissioner included all of the bad debt reserve of $27,352.09 except $2,522.19. The latter amount represented receivables as of April 30, 1936, which were not thereafter collected. Section 234(a) (5) of the Revenue Act of 1926, 44 Stat. 42, 26 U.S.C.A.Int.Rev.Acts, page 186, permits a deduction from gross income of "(5) Debts ascertained to be worthless and charged off within the taxable year (or in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); * * *."

Treasury Regulations 69, promulgated under the 1926 Act, provides in Article 151 that after a taxpayer has elected the method to be used, that method must be followed in returns for subsequent years unless permission is granted by the commissioner to change to the other method. The article further states that application for permission to change the method of treating bad debts shall be made at least 30 days prior to the close of the taxable year for which the change is to be effective. All subsequent Revenue Acts and Regulations contain similar provisions. It is to be observed that the regulations do not specify any particular form or method for the making of application by the tax-

payer or for the granting of permission by the commissioner. Consequently the Board held in this case, as it had in prior cases, that the requirements of the regulation may be satisfied by the commissioner's acceptance of returns which give notice to him that the method originally adopted has been changed. Ganahl Lumber Co. v. Commissioner, 21 B.T.A. 118; Home Ice Cream & Ice Co. v. Commissioner, 19 B. T.A. 762. We agree with such ruling. Therefore, with respect to the disposition to be made of the bad debt reserve, the case stands the same as though the commissioner had given express permission to allow the change of method to become effective for the fiscal year ending April 30, 1929.

◼◼ If a specific debt which has been charged off as worthless and used as a deduction from gross income in the taxpayer's return, is subsequently collected, the amount so collected is treated as income of the year when received. Putnam Nat. Bank v. Commissioner, 5 Cir., 50 F.2d 158, 159 and cases there cited. A similar principle should govern treatment of a reserve for bad debts when the necessity for the reserve ceases to exist and it becomes available for use in the taxpayer's business. The rule was well stated in Peabody Coal Co. v. Commissioner, 18 B. T.A. 1081, 1091 (affirmed, 7 Cir., 55 F.2d 7, certiorari denied, 287 U.S. 605, 53 S.Ct. 9, 77 L.Ed. 526): "If they are reserves the net additions to which are allowable as deductions from income, then the unexpended balances became income to the petitioner in the year in which the reason for which they were created ceased to exist, * * *."

◼ This rule was reaffirmed in G. M. Standifer Construction Corp. v. Commissioner, 30 B.T.A. 184, 187. In the case at bar, all reason for maintaining the bad debt reserve ceased with the year 1929. By February 1st of that year all accounts for which the reserve had been set up had been collected, and the commissioner gave his consent to the change in the corporation's method of accounting by accepting the 1929 return with knowledge that the reserve method was not used. Hence the reserve became income of the corporation in that year.

It was not, however, so treated and the commissioner now urges that the taxpayer should be estopped to assert the true fact with regard to it in order to escape a tax upon it in 1936. But the commissioner was not misled by the taxpayer's failure to transfer the reserve to income because, as the Board found, he was fully aware of the change in the accounting method and, consequently, of the fact that necessity for the reserve had ceased to exist and of the law making the reserve taxable as income in 1929. The commissioner's failure to tax it in that year is no justification for taxing 1929 income in a later year. We agree with the conclusions expressed in the minority opinion of the Board.

Orders reversed.