## COMMISSIONER OF INTERNAL REVENUE v. ARNOLD et al.

### No. 4003.

Circuit Court of Appeals, First Circuit.

Feb. 2, 1945.

Robert Koerner, Sp. Asst. to the Atty. Gen., and J. P. Wenchel, Chief Counsel, and John M. Morawski, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Robert N. Anderson, Sp. Assts. to the Atty. Gen., on the brief), for petitioner.

Elden McFarland, of Boston, Mass. (Harold T. Davis and Nutter, McClennen & Fish, all of Boston, Mass., on the brief), for respondents.

Before MAHONEY and WOODBURY, Circuit Judges, and PETERS, District Judge.

MAHONEY, Circuit Judge.

This case involves deficiencies in the income tax of four taxpayers for the year 1935. The Tax Court disagreed in part with the Commissioner, and the Commissioner has petitioned for review.

The facts were stipulated and as so stipulated were adopted as findings by the court below. Those facts material to the issues raised here may be summarized as follows:

The respondents are the daughters of J. Robson Douglas. In 1923 certain members of a former corporation, including Douglas, formed a new corporation bearing the name of Douglas-Rogers, Ltd., to engage in the investment business under the laws of the Province of Nova Scotia. In August, 1930, Douglas-Rogers, Ltd., sold for the account of Douglas certain stocks, opened an account on its books in the name of his four daughters, the taxpayers herein, and credited to that account the proceeds of the sale amounting to $70,000. In requesting the corporation to open the account and credit the amount to his daughters, Douglas stated it to be his intention to set up a fund for their benefit. The account was captioned "Marion I. Davis et al., Loan Account". Thereafter Douglas deposited other sums in that account. It was credited with interest at the rate of six per cent in accordance with an agreement with Douglas, and during the years concerned the company was able to pay such interest.

On September 2, 1931, the credit balance of the loan account, including interest, was $836,442.50. On that date Douglas requested the company to issue four demand notes in equal amounts, aggregating the credit balance of the account, each payable to one of the daughters. The company issued its four demand, six per cent notes, as requested and delivered them to Douglas, who kept them in his private iron box in the vault of the company. None of the daughters had access to the vault. Douglas instructed the company to deliver the notes to them in the event of his death.

Later in September, 1931, Douglas handed the notes to Marion I. Davis, one of the respondents, at her residence in Newton, Massachusetts. She advised her sisters of the existence of the notes and handed them back to her father to be deposited in his private box in the company's vault. At that time he gave her a key to the box where the notes were kept. The notes remained there until Douglas' death when the company delivered them to the daughters in December, 1934.

From September 2, 1931, to February 28, 1935, the credit balance of the loan account increased from $836,442.50 to $1,016,777.

The increase included interest in the amount of $195,807 less certain withdrawals made by the taxpayers and amounts paid to a bank and a trust company.

In February, 1935, after Douglas' death, the loan account was closed, the credit balance was transferred in equal parts to the credit of four separate accounts in the names of the daughters, and in May, 1935, the corporation was liquidated and each taxpayer received assets in cash value equal to the credit balance of her account.

In notices of deficiency, the Commissioner determined that the total amount of interest accruing on the loan account constituted taxable income in 1935.[1] The taxpayers petitioned for redetermination, and the Tax Court held: "The amounts of interest paid and credited by Douglas-Rogers, Ltd. to the petitioners in years prior to 1935 having been so paid to and received by them, should have been included in their returns for those years in whatever jurisdiction they were required to be made. Such amounts are not taxable in 1935. The amounts of interest attributed to and paid in the year 1935, including the period from February 28, 1935 to May 15, 1935, are, however, subject to tax."

In this court the Commissioner contends that the Tax Court erred in holding the amounts credited as interest prior to 1935 to the loan account were constructively received by the taxpayers prior to 1935, and in holding that those amounts are not taxable in 1935. The Commissioner concedes that Douglas made gifts from time to time to the taxpayers but contends that the record fails to show that the interest items credited to the loan account must be treated as constructively received by the taxpayers prior to the time when the account was paid over to them.

The Tax Court found that "During the years 1933, 1934 and 1935 the account was debited with withdrawals by the petitioners and amounts paid to a bank and trust company". The evidence regarding the withdrawals by the taxpayers appears in the journal entries of the loan account on the books of Douglas-Rogers, Ltd. They show that the account was debited to one or another of the taxpayers on six occasions, but that the identical amounts were later

---

[1] The Commissioner determined that each taxpayer received in 1935, one-fourth of the amount of interest, $195,807, the interest item included in the credit balance of $1,016,777 transferred to the account of the taxpayers in February, 1935.

reentered as credits before the fund was paid over.[2]

Other entries which were afterwards reversed are also found on this same account. They were considered in some detail in the findings of fact made by the Commissioner for the Provincial Treasurer of Nova Scotia and the Supreme Court of Nova Scotia in proceedings relating to the Nova Scotia succession duties on the estate left by Douglas. Although that Commissioner commented on "all the evasion surrounding this account and the reversed entries," he was referring to entries other than those relevant in the instant case. The Supreme Court of Nova Scotia was concurring with the findings made below when it observed: "It is also to be noted, for other purposes, that $5,000 was paid out of the account in August, 1933, to Marion I. Davis, and in November and December of the same year, two payments of $5,000 each to Eloise Arnold."

To the Tax Court there appeared to be "no doubt" that the deposits in the loan account were subject to withdrawal by the taxpayers. It said: "The account itself shows that during the years 1933, 1934 and 1935 such withdrawals were made by them or for them." It is clear that interest payments were regularly credited to the loan account, and the Tax Court noted that the account from which the withdrawals were made reflected the sum owed to the taxpayers by the company, "augmented by the interest payments", that "the company was a corporation ostensibly engaged in the investment business", and stated: "Obviously, it also acted as a banker for the petitioners. The quarterly payments of interest were without doubt constructively received by the petitioners. Under such circumstances it is consonant with the facts to say they were actually so received.[3]

The decision in this case turns largely upon its special facts. It is not charged here that the Tax Court failed to follow any applicable statute or regulation. No clear cut mistake of law is alleged. The sole question presented is whether the decision of the Tax Court treating the interest on the loan account as constructively received by the taxpayers prior to the time when the account was paid over to them in 1935 has any substantial basis in the evidence. As was recently pointed out by the Supreme Court in Commissioner v. Scottish American Investment Company, Limited, 65 S.Ct. 169, in deciding such a question "the judicial eye must not in the first instance rove about searching for evidence to support other conflicting inferences and conclusions which the judges or litigants may consider more reasonable or desirable. It must be cast directly and primarily upon the evidence in support of those made by the Tax Court."

The record discloses that the taxpayers were the book owners of the Marion I. Davis loan account; that demand notes representing the amounts inclusive of interest accruing to them were issued by the company and delivered by Douglas to Marion I. Davis, who advised the other taxpayers of their existence and returned them to him, receiving in exchange a key to the strong box in which they were kept; and that the notes were turned over to the taxpayers following the death of Douglas. Further, the Tax Court found that with-

---

[2] On August 29, 1933, Marion I. Davis was debited with $5,000; on November 4 and December 6, 1933, Eloise Arnold was debited with amounts of $5000. These items were reversed after the death of Douglas on February 20, 1935. On February 5, and 6, 1935, Marion I. Davis, Grace B. Douglas, and M. Jane Douglas were debited with amounts aggregating $25,000. These items were reversed on February 28, 1935.

The Commissioner contends that the credits were not by way of new deposits by the taxpayers which would be consistent with a banking arrangement and suggests that the mere reversal of the debits indicates that the debits were not authorized and mistakenly made in the first instance.

[3] Treasury Regulations 86, Revenue Act of 1934:

Art. 42.2—Income not reduced to Possession.—

"Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restrictions as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time and its receipt brought within his own control and disposition. A book entry, if made, should indicate an absolute transfer from one account to another * * *".

drawals were made from the loan account by the taxpayers or for them. We think this finding has a sufficient basis in the evidence. Even if we could we would be reluctant to superimpose our construction of the journal entries of the loan account on that of the Tax Court in the absence of clear and unequivocal error which we do not find here. Though the Commissioner argues the equivocal character of the journal entries it is to be noted that the Supreme Court of Nova Scotia stated flatly that withdrawals were made by two of the taxpayers. Therefore we think the Tax Court could properly find that the taxpayers herein "received" the disputed interest items in years prior to 1935. This would seem to be a question of proper tax accounting, and in the absence of any statute or regulation requiring a contrary holding, the decision of the Tax Court is conclusive. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, rehearing denied, 321 U.S. 231, 64 S.Ct. 495.

The Commissioner further contends that the taxpayers themselves did not treat the interest credits as income from 1930 through 1934 as it is not shown that they returned such amounts as income for those years, and that they therefore may be required to treat all the accumulated interest as income received in 1935 under the doctrine of Moran v. Commissioner, 1 Cir., 67 F.2d 601, 602. In that case Moran made certain deposits in two trust companies and received interest bearing certificates of deposit. No interest was credited on the books of the trust companies from 1915, the date of the first deposit, until 1928, when the certificates were presented and Moran collected all accrued and current interest. Moran could have presented the certificates and collected the amounts on deposit with interest at any time. In his 1928 return he reported as income only the interest earned that year. The Commissioner included all the interest received that year, and his determination was sustained. Since Moran had taken the position in returns for previous years that the interest as earned was not constructively received, the Board of Tax Appeals held

that the taxpayer could not in 1928 change his position and claim that such interest was constructively received in prior years. The Circuit Court of Appeals affirmed, saying that Moran's conduct "in not including the interest as it accrued in his early returns, evidenced an election on his part to treat it as not received until actually collected."

The doctrine of Moran v. Commissioner does not apply to the situation in the instant case. First, we do not infer here that the taxpayers changed their position in the tax year to a policy inconsistent with that followed in prior years. Before the Tax Court they took the position that the gifts were testamentary in character, and, since they were part of the estate of the decedent or gifts intended to take effect on his death, interest credited on the loan account came to the taxpayers as gifts upon Douglas' death. It was the Commissioner who there urged the inter vivos character of the gifts and thereby raised the question of constructive receipt of the interest items resolved unfavorably to him by the court below.

Second, in the Moran case it appeared affirmatively that the taxpayer filed returns for the prior years and did not report that income he afterwards tried to apply to those years by the application of the doctrine of constructive receipt, and that the statute of limitations would prevent the imposition of any tax on such income assigned to those earlier years. In the instant case, on the other hand, it does not appear that the taxpayers filed returns in prior years or were required to file them.[4] Nor does the record suggest that the collection of the tax on income constructively received in earlier years would be barred by the statute of limitations.[5] In the Moran case there was no finding of constructive receipt of the disputed income in prior years, whereas, in the present case, the Tax Court specifically found constructive receipt of the disputed items of interest before 1935.

The decisions of the Tax Court are affirmed.

---

[4] Nonresident aliens are not subject to taxation upon income from sources outside of the United States. The taxpayers were aliens by birth, and the record does not show they were residents before 1935, or, if they were, that they filed income tax returns. The Regulations provide that "an alien, by reason of this alienage, is presumed to be a nonresident alien". Article 1024, Regulations 74 and 77; Articles 211–213, Regulations 86.

[5] Section 276(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 276(a), provides that "in the case of a false or fraudulent return * * * or of a failure to file a return the tax may be assessed * * * at any time."