**ROSS v. COMMISSIONER OF INTERNAL REVENUE.**

No. 4281.

Circuit Court of Appeals
First Circuit.

July 13, 1948.

Stanley M. Brown, of Manchester N. H. (McLane, Davis & Carleton, of Manchester, N. H., on the brief), for petitioner.

Abbott M. Sellers, Sp. Asst. Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Helen R. Carloss, Robert N. Anderson, and Maryhelen Wigle, Sp. Assts. to Atty, Gen., on the brief), for Commissioner of Internal Revenue.

Before FRANKFURTER, Circuit Justice, and MAHONEY and WOODBURY, Circuit Judges.

FRANKFURTER, Circuit Justice.

Lewis H. Ross petitions for review of a decision of the Tax Court of the United States entered February 11, 1947, determining a deficiency of $6,611.15 in his income tax liability for the year 1939. This deficiency represents the tax due on amounts which, having been previously credited to petitioner's account as salary in the years 1927 to 1932, inclusive, on the books of a corporation of which he owned half the common stock, were received by him in cash in the years 1939, 1940, and 1941.

Most of the facts are stipulated and adopted as findings of fact by the Tax Court. In December, 1925, Ross entered the firm of E. M. Chase Co., Inc., in Manchester, N. H., under the terms of an agreement with his uncle, Edward M. Chase, who then owned and controlled the company. The firm was engaged in the retail installment sale of furniture and household appliances. The agreement, effective on January 4, 1926, provided, among other things, that Ross was to buy 50 of the 100 outstanding shares of common stock of the company, that the company was to purchase each year from Chase $10,000 of his preferred stock, and that after all of Chase's preferred stock was retired, he was to sell to Ross his half of the common stock. It was further agreed that for two years Chase was to receive a weekly salary of $100 and Ross of $75, and that subsequent salaries were to be determined later by mutual agreement. Prior to the effective date of the agreement, the capital stock of the company amounted to $110,000, consisting of $100,000 in 6% preferred stock and $10,000 in common stock, and the books of the corporation showed a surplus of $38,000. On or about January 4, 1926, it was voted to increase the preferred stock to $138,000 by capitalizing the surplus. Fifty shares of common stock were thereafter transferred to Ross.

The subsequent salary agreement contemplated by Ross and Chase was entered into on January 1, 1927, fixing the salary of

Chase at $10,400 per year and that of Ross at $7,800 per year. It provided, further, that one half of these salaries was to be paid in cash weekly and that the remaining half was to be credited weekly on the books of the company to Ross and Chase, but allowed to remain in the treasury of the corporation as working capital until all the preferred stock held by Chase was redeemed by the company, at which time the balance of accrued salaries due to Chase and Ross was to become payable. Another agreement, on January 2, 1928, increased the salary of Chase to $17,500 per year, and that of Ross to $10,000 per year, and again restricted the withdrawal of salaries, this time providing that $75 weekly be paid in cash to each and that the remainder of the salaries be credited weekly on the books of the company and allowed to remain in the treasury as working capital until the preferred stock held by Chase was entirely redeemed.

Under the terms of these salary agreements, Ross and Chase thereafter withdrew in cash only a portion of their salaries, and allowed the remainder to accrue on the books of the company. The amounts actually paid to Ross and the amounts accrued to his credit on the company's books from 1927 to 1932 were:

in its corporate income tax returns filed on the accrual basis of accounting, claimed, and was allowed, deductions for the full amount of all salaries paid and credited to Chase and Ross.

The preferred stock held by Chase was gradually retired by the company by payments in cash and by the issuance of promissory notes, so that by April, 1932, redemption was complete, removing the prohibition effected by the salary agreements against full cash payment of the salaries of Chase and Ross.

The financial status of E. M. Chase Company, as shown by its balance sheets for the years 1926 through 1941, was also stipulated and referred to by the Tax Court as perhaps bearing on the question of the company's ability to have paid the accrued salaries. As of December 31, 1932, when the accrued salaries of Chase and Ross amounted to $98,400, the company had a cash overdraft of $477.09, its accounts receivable were $265,393.95, and its surplus was $62,994.84. The Tax Court found, though not stipulated, that the company had "a line of bank credit of $50,000. It had a policy of not selling its accounts receivable, which could have been sold, and the only accounts receivable ever sold by the company were sold to Chase under the

| Year Ended | Salary | Withdrawn | Accrued | Total Accrued |
|---|---|---|---|---|
| December 31, 1927 | $ 7,800 | $ 3,900 | $ 3,900 | $ 3,900 |
| December 31, 1928 | 10,000 | 3,900 | 6,100 | 10,000 |
| December 31, 1929 | 10,000 | 4,800 | 5,200 | 15,200 |
| December 31, 1930 | 10,000 | 5,100 | 4,900 | 20,100 |
| December 31, 1931 | 10,000 | 5,100 | 4,900 | 25,000 |
| December 31, 1932 | 9,400 | 4,500 | 4,900 | 29,900 |
| | $57,200 | $27,300 | $29,900 | |

Ross included in his federal income tax returns for the years 1927 through 1932, filed on a cash receipts and disbursements basis, only the amounts of salary which he received in cash. Thus, as of December 31, 1932, $29,900 in salaries was accrued to the credit of Ross which had not been included in his income tax return for any year, and on which no federal income tax had been paid. Meanwhile, E. M. Chase Company,

agreement of December 30, 1925." But the Tax Court made no finding on the company's actual ability to pay the accrued salaries.

In the years 1933 and 1934 Ross continued to include in his income tax returns only the amount of salary paid to him. There were no accruals in 1935. In 1936, the Commissioner of Internal Revenue assessed a deficiency against Ross's income

for 1933 and 1934,[1] on the theory that amounts accrued on the books of the company to Ross's credit in those years were constructively received by him. Thereafter, Ross included in his income tax returns all salaries earned by him, whether or not received. The Tax Court found as a fact, though not stipulated, that in connection with the deficiency assessments for 1933 and 1934, a letter to Ross from the office of the Commissioner, signed by a representative of the Technical Staff, enclosed a copy of a report of the Revenue Agent, stating:

"Since a claim for bona fide salary has precedence over the retirement of preferred stock, it follows that the reversed procedure followed in this case could have been done only with the consent of the taxpayer who not only had a complete knowledge of all those procedures but actually was a party in arranging them. The entire salary from E. M. Chase Company is therefore included in income of the current year. * * *"

Apparently the Tax Court found from this letter knowledge on the part of the Commissioner in 1936 at the time of the assessments for 1933 and 1934 of the ability of Ross to have withdrawn the accrued salary in 1932. The Court also found that Ross at the time of these assessments believed that the company could not have paid the accrued salaries (though it is not clear whether the Court was referring to Ross's opinion as to the company's financial ability in 1933 and 1934 alone, or from 1927 through 1932 also), but that Ross's opinions somewhat reflected those of Chase who was "more or less in charge of the financial operations of the company."

Beginning in 1936, Ross began to make withdrawals from his accrued salary account in the following amounts:

| Year | Withdrawals from Accrued Account |
|---|---|
| 1936 | $707.22 |
| 1937 | 592.72 |
| 1938 | 604.01 |
| 1939 | 13,007.85 |
| 1940 | 9,447.70 |
| 1941 | 12,755.01 |

In his income tax returns for the years 1936 through 1941, though now reporting salary currently accrued as well as salary received in cash, Ross did not report any part of the withdrawals from his accrued salary account.

The Commissioner thereupon, on October 25, 1945, notified Ross of a deficiency of $8,988.15 in income tax liability for the years 1939,[2] 1940, and 1941, representing the tax due on the income represented by these withdrawals, as follows:

| Year | Liability | Assessed | Deficiency |
|---|---|---|---|
| 1939... | $4,190.12 | $1,542.90 | $2,647.22 |
| 1940... | 7,876.00 | 4,332.20 | 3,543.80 |
| 1941... | 10,363.93 | 7,566.80 | 2,797.13 |
| Totals | $22,430.05 | $13,441.90 | $8,988.15 |

Though the withdrawal made during 1941 was $12,755.01, the Commissioner included only $5,545.50 of this amount in computing the deficiency for that year, on the theory that the latter amount, added to the withdrawals made in prior years, was sufficient to total the full $9,900 accrued and not reported from 1927 through 1932.[3]

---

[1] The period of limitations on assessments for years prior to 1934 was two years from the date a return was filed. Years prior to 1933 were therefore barred.

[2] Although the 5-year period of limitations contemplated by 275(c) of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 275(c), for assessing a deficiency, had expired for the taxable year 1939 on April 15, 1945, the Commissioner, in accordance with § 276(b) of the Code, 26 U.S.C.A. Int.Rev.Code, § 276(b), secured an extension by consent of Ross within the 5-year period and issued the deficiency notice within the extended period.

[3] The Commissioner did not seek to reach the withdrawals totalling $1,903.95 made from 1936 through 1938, presumably because the statute of limitations barred those years. He treated them as part of the $29,900 accrued from 1927 through 1932, and accordingly reduced by $1,903.95 the amount of the 1941 withdrawal he would otherwise have included in his deficiency. He seems to have included $5 too much in 1941, since the prior withdrawals plus the $5,545.50 which he attempted to reach in 1941 total $29,905.

On January 17, 1946, Ross filed a petition with the Tax Court seeking a redetermination of the deficiency computed by the Commissioner. At the hearing before the Tax Court on June 21, 1946, evidence was introduced that on the returns for 1939, 1940, and 1941 a typewritten "X" appeared in the squares indicating that the returns were filed on the accrual basis of accounting. The Commissioner, therefore, moved for leave to file an amendment to his answer in order to present this issue to the court. This motion was granted ex parte on July 29, 1946, and the Commissioner's amendment was duly filed. On August 5, 1946, Ross moved that the court's order granting the Commissioner's motion to amend be vacated. A hearing on Ross's motion was thereafter held, and as a result the order granting the motion to amend the answer was vacated "with leave to respondent to move * * * for a further hearing herein, and to renew his said motion at such hearing, in the event that the parties are unable to arrive at an agreement in the matter within the time so fixed." The controversy over the motion to amend was finally culminated by the filing, on October 9, 1946, of Stipulation No. 2 by which the parties agreed:

"If the court should find that for the taxable years 1939, 1940 and 1941 the petitioner was upon the accrual basis of accounting for income tax purposes, and should further find that said amounts which were added by the Commissioner to the petitioner's taxable income for the said years are taxable income to the petitioner only in the year 1939 and that all of said amounts should be included in petitioner's taxable income for the year 1939, then and in that event the court may find there is a deficiency in income tax for the year 1939 in the amount of $6,611.15 and that there are no deficiencies in income tax for the years 1940 and 1941."

On February 11, 1947, the Tax Court determined that there was a deficiency of $6,-611.15 in the petitioner's income tax liability for 1939. In addition to the facts already set forth, the Tax Court found that Ross was on an accrual basis for income tax purposes in 1939, 1940 and 1941, and that he had not submitted an application to the Commissioner for permission to change the basis of filing his returns from a cash receipts and disbursements basis. The court then reasoned that "A shift in 1939 to an accrual method of accounting would make it appropriate to require the petitioner's accounts receivable for salary due should be included as income for that year, since otherwise, whenever collected in cash, they could escape taxation under petitioner's accrual accounting." The court stated further: "The parties have stipulated that upon such a determination a deficiency in the amount of $6,611.15 may be determined for 1939, with a determination of no deficiencies for 1940 and 1941. That disposition makes unnecessary any discussion of the ground on which respondent's position was originally founded, that because of petitioner's cash system, his receipt in cash of payments recorded as being out of the past-due salary account constitutes presently taxable income." 6 C. C. H. Tax Ct. Memo. Dec. No. 15,614(M)..

The petitioner contends that the Tax Court erred in its interpretation and use of Stipulation No. 2, relying on the stipulation to dispose of the controversy without considering the basic issue of when the disputed salary items were received by the petitioner for tax purposes; that the Tax Court erred in finding that the petitioner was on an accrual basis of accounting in 1939; that the Tax Court erred in failing to rule or find that the petitioner was in constructive receipt of the disputed items and taxable on them from 1927 through 1932, or—if not then—in April, 1932, when the retirement of Chase's preferred stock made the salary account "due and payable," or—if not then—at some other time prior to the taxable year 1939; that the Tax Court erred in attempting to dispose of the petition by ingrafting "equitable" principles into a tax deficiency proceeding and thereby sustaining an assessment on years barred by the statute of limitations. The petitioner urges further that the facts necessary to a proper and final disposition of the controversy have been found by the Tax Court and appear in the record, enabling this court to determine as a matter of law when the disputed income was received.

Respondent agrees with petitioner that the question whether petitioner was on the accrual basis of accounting in 1939, 1940, and 1941 becomes important only after it has been determined that the accrued salary did not constitute income when earned, and that if the salary was allocable to prior years it cannot be taxed now. Respondent argues, however, that the doctrine of constructive receipt cannot be resorted to by a taxpayer who thereby changes his previous position that the items in question are not income until reduced to possession. Though conceding lack of fraudulent intent on the part of the taxpayer, respondent nevertheless argues further that petitioner made an election not to treat the items in question as income until physically received, and that petitioner is now bound thereby. Respondent asserts that he was not apprised of the crediting of part of petitioner's salary, and of the removal in 1932 of the barrier to withdrawal, until the statute of limitations had barred a deficiency for 1932. Respondent questions the Tax Court's finding that petitioner was on the accrual basis in 1939, 1940, and 1941, and its consequent lumping of all withdrawals into the taxable year 1939, but respondent does not appeal. Finally, respondent suggests that "matters of this kind are 'tax accounting' and so now within the special province of the Tax Court under the doctrine of Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248. * * *"

We need not decide whether the Tax Court's finding that petitioner was on the accrual basis in 1939 was supported by substantial evidence. According finality to this finding, we nevertheless conclude that the decision below is erroneous. It is based on a misconception of the respective functions of the Commissioner and the Tax Court in prescribing the conditions appropriate for approval of a change in the method of accounting. As such, the decision is reviewable under both the majority and the concurring views expressed in Trust of Bingham v. Commissioner, 1945, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670, 163 A.L.R. 1175.

Section 29.41-2 of Treasury Regulations 111 provides, in part: "A taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. * * * Permission to change the method of accounting will not be granted unless the taxpayer and the Commissioner agree to the terms and conditions under which the change will be effected." Pursuant to this section, the Commissioner has been regarded as possessing considerable discretion to prescribe conditions to the granting of consent to a change-over. Cf. William Hardy, Inc. v. Commissioner, 2 Cir., 1936, 82 F.2d 249. In the Hardy case, however, there was no problem, as here, of whether accrued salary was constructively received in years barred by the statute of limitations. And in any event, whether the Commissioner could or could not, as a prerequisite to petitioner's adoption of the accrual basis, have included the items in question in petitioner's 1939 income, the short answer is that the Commissioner has never done so, and the Tax Court cannot now do it for him.[4]

The Regulation granting the Commissioner this power provides an exception to the statutory policy in favor of annual accounting periods. But it mentions only the Commissioner. Nowhere in the Code

---

4 The reasoning of the Tax Court is especially difficult to justify in view of its own ruling that respondent's consent to petitioner's change in accounting method must be presumed from respondent's proffered amendment to his answer, proposing to rely on the fact that petitioner was on an accrual basis in 1939. This ruling may find support in decisions that the requirement of the Commissioner's consent to a change in accounting method is satisfied by the Commissioner's acceptance of returns on which such a change is indicated. Fowler Bros. & Cox, Inc. v. Commissioner, 6 Cir., 1943, 138 F.2d 774; S. Rossin & Sons, Inc. v. Commissioner, 2 Cir., 1940, 113 F.2d 652; cf. National Bank of South Carolina v. Lucas, 1929, 59 App.D.C. 157, 36 F.2d 1013. If the Tax Court is correct in presuming the Commissioner's unconditional consent, then clearly the Tax Court may not itself prescribe conditions to that consent.

490

or Regulations is authority given the Tax Court to redetermine a deficiency as it did. Indeed, § 272 (g) of the Code, 26 U.S.C.A. Int.Rev.Code, § 272(g), may perhaps be regarded as evidencing a desire on the part of Congress to limit narrowly the jurisdiction of the Tax Court in cases of this sort: "The Board in redetermining a deficiency in respect of any taxable year shall consider such facts with relation to the taxes for other taxable years as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other taxable year has been overpaid or underpaid." Cf. Commissioner v. Gooch Milling & Elevator Co., 1943, 320 U.S. 418, 64 S.Ct. 184, 186, 88 L.Ed. 139. We therefore hold that the Tax Court exceeded its powers in assigning the disputed items to the petitioner's 1939 income. Consequently, we need not pass on the petitioner's contention that the Tax Court has misconstrued Stipulation No. 2, p. 7, supra.

■ If the Tax Court had supplied us with a finding as to the taxable year in which the disputed salary items were received, such a finding on a matter of proper tax accounting might well come within the doctrine of Dobson v. Commissioner, 1943, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248; see also Commissioner v. Arnold, 1 Cir., 1945, 147 F.2d 23, 26. But no such finding is in the record. This court is without power on review of proceedings of the Tax Court to make any findings of fact. Helvering v. Rankin, 1935, 295 U.S. 123, 131, 55 S.Ct. 732, 79 L.Ed. 1343. If there were no more to the case, therefore, than what has already been discussed, we would have no alternative to reversing the decision and remanding the case to the Tax Court. Cf. Helvering v. Taylor, 1935, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623.

■ But respondent has the right to urge on this court, and we have the right to consider on our own motion on appeal, other grounds which might justify the decision below regardless of the erroneous theory advanced by the Tax Court. Le-Tulle v. Scofield, 1940, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355; Helvering v.

Gowran, 1937, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224; White v. Higgins, 1 Cir., 1940, 116 F.2d 312, 318. Accordingly, we consider the argument advanced by respondent that taxpayer cannot invoke the doctrine of constructive receipt and thereby take a position inconsistent with that taken by him from 1927 through 1932; and that, since the taxpayer has elected not to treat the items in question as income until physically reduced to possession, he is now bound by his election. Of course, having rejected the Tax Court's view of the case, even if we were to affirm its decision on one of these additional grounds we should have to order the deficiency found by the Tax Court for 1939 to be redetermined in accordance with the Commissioner's original deficiency notice for 1939, 1940, and 1941.

■ While ordinarily the question whether income is received is a matter of proper tax accounting, respondent here raises a problem going to the very nature of the doctrine of constructive receipt, and a problem dealing with the extent to which we should import principles of election, and perhaps of estoppel, into tax law. These are questions appropriate for determination by this court.

■ The doctrine of constructive receipt treats as taxable income which is unqualifiedly subject to the demand of a taxpayer on the cash receipts and disbursements method of accounting, whether or not such income has actually been received in cash. See 2 Mertens, Law of Federal Income Taxation, § 10.01 (1942); Zysman, Constructive Receipt of Income, 16 Tax Mag. 715 (1938); Kaplan, The Doctrine of Constructive Receipt, 19 Taxes 547 (1941); Note, 53 Harv.L.Rev. 851, 854—55 (1940). The doctrine has been incorporated in the Treasury Regulations from the beginning and is currently to be found in Regulations 111, § 29.42–2:

"Income not reduced to possession.—Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt

in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. A book entry, if made, should indicate an absolute transfer from one account to another. If a corporation contingently credits its employees with bonus stock, but the stock is not available to such employees until some future date, the mere crediting on the books of the corporation does not constitute receipt." [5]

■ Examples of constructive receipt are set forth in § 29.42–3. While they do not include salaries credited to an officer on the books of a corporation, it is settled that such items fall within the doctrine. E. g., Schoenheit v. Lucas, 4 Cir., 1930, 44 F.2d 476, 480, 481; Burns v. Commissioner, 5 Cir., 1929, 31 F.2d 399, certiorari denied, 1929, 280 U.S. 564, 50 S.Ct. 25, 74 L.Ed. 618; see 2 Mertens, supra, § 10.13. We need not determine here whether or not, in the light of the restrictive agreements and the financial status of the corporation, petitioner's accrued salary was unqualifiedly subject to his demand in the years 1927 through 1932. These are questions of fact to be determined by findings of the Tax Court. Nevertheless, we should now pass on the respondent's suggestion that, even if such findings are made in the petitioner's favor, he may not invoke the doctrine of constructive receipt because the doctrine was designed only to protect the revenue and is not available for a taxpayer's defense, or, in the alternative, because the petitioner is now precluded from taking a position inconsistent with his theory in the years when the salary was credited to him.

The doctrine of constructive receipt was, no doubt, conceived by the Treasury in order to prevent a taxpayer from choosing the year in which to return income merely by choosing the year in which to reduce it

to possession. Thereby the Treasury may subject income to taxation when the only thing preventing its reduction to possession is the volition of the taxpayer. But is the doctrine to be deemed merely an available tool of the Commissioner, or is it a test of realization of income within the meaning of § 42 of the Code, 26 U.S.C.A. Int.Rev. Code, § 42, providing that income shall be taxed in the year it is received? If it is the former, the normal rule that income is taxable to a taxpayer on the cash system of accounting only when actually received in cash, or the equivalent of cash, remains unqualified except for the privilege of the Commissioner to reach items which satisfy § 29.42–2 of his Regulations. If it is the latter, then it is a mandatory rule that items which satisfy § 29.42–2 are "received" and therefore taxable only in the year of "constructive receipt," and the taxpayer as well as the Commissioner may rely on it.

The Regulations themselves offer little help in solving this problem. Section 29.42–2 speaks of income which may be drawn upon at any time as *"subject to tax for the year during which so credited or set apart,"* which suggests that the Commissioner has an option to treat such income as received or not, as he prefers; but the Regulation goes on to provide: *"To constitute receipt* in such a case the income must be credited or set apart to the taxpayer *without any substantial limitation,"* from which the opposite conclusion may be drawn. (Italics supplied.) Nor do cases or commentaries resolve the ambiguity. Compare Raleigh v. United States, 1934, 5 F. Supp. 622, 78 Ct.Cl. 653; Alice H. Moran, 1932, 26 B.T.A. 1154, affirmed on other grounds, 1 Cir., 1933, 67 F.2d 601; J. O. W. Gravely, 1933, 29 B.T.A. 29; Dillis C. Knapp, 1940, 41 B.T.A. 23; George H. Letz, Sr., 1941, 45 B.T.A. 1011; Pacific Northwest Finance Corporation, 1944, 3 T.C. 498, 503; 2 Mertens, supra, § 10.02; Note, 53 Harv. L. Rev. 851, 854–55 (1940), with Commissioner v. Scatena, 9 Cir., 1936, 85 F.2d 729; Commissioner v. Yates, 7 Cir., 1936, 86 F.2d 748; Loose v. United States, 8 Cir.,

---

[5] A similar principle has been approved by the Supreme Court in the determination of the person to whom income is taxable. Corliss v. Bowers, 1930, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916.

1934, 74 F.2d 147, 150; and William Steele, 1936, 34 B.T.A. 173, 176.

■■ However, in this Circuit at least, it seems settled that the doctrine of constructive receipt can be asserted by a taxpayer to defeat an attempt to assert a tax in a later year. In Commissioner v. Arnold, 1 Cir., 1945, 147 F.2d 23, a loan account with an investment company was established for the benefit of the taxpayers. Interest was credited to them in years prior to 1935, and was actually received in 1935 on liquidation of the company. This court upheld the Tax Court's decision that amounts constructively received in prior years were not taxable in 1935.[6] And even were this a problem of first impression, the same result is persuasive. We should suppose that by virtue of the doctrine of constructive receipt, a taxpayer has an affirmative obligation to report any income falling within its scope in his return for the year of such receipt, and that his failure to do so will subject him to such liabilities for interest, penalties, or even criminal prosecutions, as may be appropriate to his case. If this is so, the doctrine does not merely afford a special choice which the Commissioner may, if he sees fit, exercise retroactively against a taxpayer, but a rule of law, determining what constitutes taxable income, and as such presumably binding on all parties. To allow the Commissioner to refrain, at his own option, from asserting his claim until years later is against the important policy underlying the statute of limitations. If this view means avoidance of taxation in some cases, it must be remembered that if such avoidance is fraudulent the tax may be assessed or collected at any time. Int.Rev.Code, § 276 (a), 26 U.S.C.A. Int.Rev.Code, § 276 (a). If every opportunity for escaping taxation is to be barred, even in the absence of fraud, such complete safeguards are for Congress to devise.

■ There remains the question whether a duty of consistent dealing with the government, or an election to treat the items in dispute as not received until reduced to possession, prevents a taxpayer from contesting the taxability of the accrued salary in the years of withdrawal. Latent in the case also is the problem whether petitioner's failure to report the accrued salaries as income when credited to him was a misrepresentation of fact sufficient—though innocent—to raise against him an estoppel in pais. Respondent has not expressly relied on this last point, but he has cited cases which advance it. At the outset it might be questioned whether any of these defenses of an equitable nature can now be raised when they have not been affirmatively pleaded or presented before the Tax Court. In Helvering v. Salvage, 1936, 297 U.S. 106, 108, 109, 56 S.Ct. 375, 376, 80 L.Ed. 51, the Supreme Court stated: "Upon these conflicting claims, the Board of Tax Appeals took the matter. There the Commissioner asserted correctness of his action; he presented no affirmative defense; set up no claim of estoppel because of the taxpayer's failure properly to report 1922 gain. * * * The defense of estoppel was not before the Board. Under what we regard as the correct practice, General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154, * * * the court [below] should have passed the point." Cf. Tide Water Oil Co., 1934, 29 B.T.A. 1208; see 10 Mertens, supra, § 60.03. Perhaps a distinction should be drawn, however, between a new argument to overturn a lower court decision, and the suggestion of a new ground for sustaining it, beyond, as it were, the lower court's judgment.[7] But in view of our disposition of

---

[6] While it is true that the Arnold case is distinguishable, in that there is no indication that the statute of limitations barred the earlier years, this fact does not qualify its authority for the proposition that the doctrine of constructive receipt can be a shield for the taxpayer as well as a sword for the Commissioner.

[7] Of course a party may offer any ground for sustaining a lower court's decision, although not previously raised or considered. See United States v. American Ry. Express Co., 1942, 265 U. S. 425, 435, 436, 44 S.Ct. 560, 68 L.Ed. 1087. In the instant case, however, if a doctrine of election or estoppel is applied, instead of all of the disputed income being attributed to 1939, as held by the Tax Court, resulting in an obligation of the petitioner amounting to $6,611.15, the income would be regard-

this case, we need not decide whether such distinction is proper.

If we are permitted to consider these equitable defenses, we are faced with "one of the most confused and entangled subjects in all tax law." United States v. Du Pont, D.C.Del., 1942, 47 F.Supp. 894, 896; see Maguire and Zimet, Hobson's Choice and Similar Practices in Federal Taxation, 48 Harv.L.Rev. 1281 (1935); Atlas, The Doctrine of Estoppel in Tax Cases, 3 Tax L.Rev. 71 (1947); Jones, Estoppel in Tax Litigation, 26 Geo.L.J. 868 (1938); Karol, The Doctrine of Estoppel, 23 Taxes 1132 (1945).

At the outset, a significant difference, certainly in terminology, is to be noted, between election and estoppel. The former is applicable where a taxpayer has had a choice of two methods of computing his tax, both legal; where the doctrine of election is applied he is not permitted to change his mind to the detriment of the revenue. Estoppel, on the other hand, applies where there was only one lawful course open, which was not followed by the taxpayer, as a result of which, in certain instances, he is barred from treating some later related transaction in the manner in which he would normally be permitted to deal with it.

The respondent's argument in this case appears to be couched in terms of election, and is based on the theory, which we have rejected, that constructive receipt is a rule the application of which is optional with the Commissioner, and that there was something akin to a real choice available to the petitioner before, or in, 1932. But under our view of constructive receipt, petitioner had no lawful choice other than to report as income such of his salary as was constructively received, either in 1932 or earlier.[8] It therefore appears that if

either of these doctrines applies, it is that of estoppel. Thus our decision in Moran v. Commissioner, 1 Cir., 1933, 67 F.2d 601, heavily relied upon by respondent, appears clearly distinguishable. In that case the taxpayer owned certificates of deposit which bore interest, but the interest was not credited to any particular person or certificate; interest was paid and charged to a general account only when certificates were presented. In 1928 the taxpayer collected back and current interest, but reported as income only that part earned in 1928. The court compared the case to the situation where one has the right to file either of two different sorts of returns, and said that the taxpayer was bound by his election to treat the interest as not received until collected. The decision emphasized the fact that there was room for real doubt as to the proper tax treatment to be accorded the interest prior to its physical receipt, so that the taxpayer could really be regarded as having made a choice. The court also noted that the Commissioner had never challenged the taxpayer's election. Thus, the case now before us is distinguishable from the Moran case in so far as there was no real doubt, in 1932 at least, as to the taxability of petitioner's accrued salary. Moreover, in the present case, the Commissioner did challenge petitioner's "election" when in 1936 he required petitioner to take the very theory of constructive receipt which petitioner is now supposed to be precluded from urging.

The Moran case was narrowly limited by this court in Commissioner v. Arnold, 1 Cir., 1945, 147 F.2d 23, and other recent decisions appear to require, as a condition to applying the doctrine of election, that the Code or Regulations specifically allow the taxpayer alternative methods of treating the transaction in question.[9]

Respondent offers another doctrine,

ed as received when the withdrawals were made, in 1939, 1940, and 1941, and petitioner's liability would presumably be the amounts asserted in the deficiency notice—$2,647.22, $3,543.80, and $2,797.13 respectively, a total of $8,988.15.

[8] Respondent has conceded that if the salaries were income prior to 1939, they cannot be taxed in that year. Since this concession presupposed a view of

constructive receipt which we have rejected, we do not hold the respondent bound by it.

[9] See 10 Mertens, supra, §§ 60.17, 60.18; Maguire and Zimet, supra at 1285–93. Thus, taxpayers have been bound by an election under § 44(b) of the Code to return income from a sale on the installment basis rather than the cash basis. Portland Oil Co. v. Commis-

which has found some judicial support, that a taxpayer must consistently follow the theory upon which his earlier returns were made. Although akin to estoppel, this rule differs from the usual variety of estoppel in that it is applied even where reliance is not based on any misstatement of fact, innocent or otherwise. See Comar Oil Co. v. Helvering, 8 Cir., 1939, 107 F.2d 709, 711, 712. The same theory was invoked to the disadvantage of the government in Dixie Margerine Co. v. Commissioner, 6 Cir., 1940, 115 F.2d 445, certiorari denied, 1936, 297 U.S. 713, 56 S.Ct. 589, 80 L.Ed. 999. See also Johnson v. Commissioner, 5 Cir., 1947, 162 F.2d 844, 846; Raleigh v. United States, 1934, 5 F.Supp. 622, 78 Ct.Cl. 653.

But this doctrine, characterized by Judge Learned Hand as "a kind of estoppel as to the law," (Bennet v. Helvering, 2 Cir., 1943, 137 F.2d 537, 539, 149 A.L.R. 1146), has been rejected in this Circuit. Commissioner v. Saltonstall, 1 Cir., 1941, 124 F.2d 110. And the Second Circuit has rejected it repeatedly. Bennet v. Helvering, supra; Lembcke v. Commissioner, 2 Cir., 1942, 126 F.2d 940; Schmidlapp v. Commissioner, 2 Cir., 1938, 96 F.2d 680, 118 A.L.R. 297; Bigelow v. Bowers, 2 Cir., 1934, 68 F.2d 839, certiorari denied, 1934, 292 U.S. 656, 54 S.Ct. 864, 78 L.Ed. 1504. While the doctrine is urged in the name of equity, it is far from clear where the equities are in this case. The statute of limitations itself has equitable aspects and the difficulty with respondent's argument is that "it does not do equity unless supplemented by what in the end comes to a reassessment of the first tax" in violation of the statute of limitations. It appears nothing more than "an excuse for reopening the earlier assessment in the face of the statute. * * * Were an assessment a judgment, there might be some basis for an estoppel of record in both situations [estoppel as to the law and as to the facts]: the estoppel as to the law depending on how far questions of law are regarded as subject to the doctrine of res judicata. But estoppels by judgment have nothing to do with the equity of the particular case, and indeed often operate very harshly; and none of the decisions on this subject have ever suggested that the Commissioner's assessment creates an estoppel by judgment. They have been uniformly based upon some supposed equity." Bennet v. Helvering, supra, 137 F.2d at pages 538, 539.

Moreover, if the taxpayer has been guilty of inconsistency, he has not been alone in that failing. Respondent arrived at his deficiency assessments for 1933 and 1934 on the theory that salary credited to petitioner was constructively received in those years; now he deserts that theory in so far as the years 1927 through 1932 are concerned. While the restrictive salary agreement in force until April, 1932, may justify his inconsistency as to prior years, there is nothing in the record which distinguishes the status of petitioner's accrued salary after April 1, 1932, from its status in 1933 and 1934. In several instances the Commissioner has been precluded from adopting a

sioner, 1 Cir., 1940, 109 F.2d 479, certiorari denied, 1940, 310 U.S. 650, 60 S. Ct. 1100, 84 L.Ed. 1416; Commissioner v. Moore, 10 Cir., 1931, 48 F.2d 526, certiorari denied, 1931, 284 U.S. 620, 52 S.Ct. 8, 76 L.Ed. 528; cf. Freeman v. United States, 3 Cir., 1934, 71 F.2d 969, certiorari denied 1934, 293 U.S. 621, 55 S.Ct. 217, 79 L.Ed. 709. Other examples of election are to be found in the decision to charge off specific bad debts instead of using the reserve method (Manistique Lumber & Supply Co., 1933, 29 B.T.A. 26), or to file consolidated rather than separate returns (Pictorial Review Co. v. Helvering, 63 App. D.C. 21, 68 F.2d 766), or to deduct depreciation on a straight-line basis rather than on a retirement basis (Corinne S. Koshland, 1935, 33 B.T.A. 634). But a mere erroneous failure to include income in the year when it was properly taxable does not constitute an election even though the question of taxability in that year was not clear. Greenwood Packing Plant v. Commissioner, 4 Cir., 1942, 131 F.2d 787, 790; Commissioner v. Union Pac. R. Co., 2 Cir., 1936, 86 F. 2d 637; Estate of Myers, 1942, 1 T.C. 100, 111; Sugar Creek Coal & Mining Co., 31 B.T.A. 344 (1934); cf. Schmidlapp v. Commissioner, 2 Cir., 1938, 96 F. 2d 680, 683; Helvering v. Brooklyn City R. Co., 2 Cir., 1934, 72 F.2d 274; Tide Water Oil Co., 29 B.T.A. 1208, 1222 (1934). But cf. Johnson v. Commissioner, 5 Cir., 1947, 162 F.2d 844.

position inconsistent with one previously taken. Joseph Eichelberger & Co. v. Commissioner, 5 Cir., 1937, 88 F.2d 874; Ford Motor Co. v. United States, 1935, 9 F.Supp. 590, 81 Ct.Cl. 30, certiorari denied, 1935, 296 U.S. 636, 56 S.Ct. 170, 80 L.Ed. 452; see Orange Securities Corporation v. Commissioner, 5 Cir., 1942, 131 F.2d 662, 663; 10 Mertens, supra, § 60.13.

It may be possible to spell out of respondent's contention that petitioner cannot change his position, the argument that petitioner, having made a misstatement of fact on which respondent has relied to his detriment, is now estopped to deny the truth of his former representation. Except for an inconclusive dictum in Helvering v. Salvage, supra,[10] the Supreme Court has not yet entered this field. Decisions of the lower federal courts disclose many views in various degrees of conflict. Cases can be found denying entirely the proposition that a mere failure to report income serves as a basis for raising an estoppel. Others seem to approve the application of estoppel to this situation but demand strict compliance with all the requirements of estoppel in pais. Still others rely on the estoppel doctrine in cases where one or more of its elements are not clearly present, sometimes speaking of "quasi-estoppel," or "broad equitable considerations". See Mertens, supra, §§ 60.01–60.11.

Respondent relies upon the decision of this court in Crane v. Commissioner, 1 Cir., 1934, 68 F.2d 640, wherein we held that a landlord's innocent failure to report as income the value of improvements made by a tenant to leased premises constituted a statement that no such income was received, so that where the government had relied on the statement to its detriment the landlord could not later deny its truth by adding the value of the improvements to his basis for gain or loss on selling the premises. This court recently approved the Crane case in Countway v. Commissioner, 1 Cir., 1942, 127 F.2d 69, explaining that, "Where one is under a duty to disclose the existence of a fact, his non-disclosure of the fact is equivalent in legal effect to an affirmative statement that the fact does not exist." 127 F.2d at page 76.

But in the Crane and Countway cases, knowledge of the facts not disclosed was not imputed to the government. They do not qualify the proposition that a party may not successfully claim reliance on a misrepresentation when he knew the truth, nor probably even when he ought to have known the truth. Joyce v. Gentsch, 6 Cir., 1944, 141 F.2d 891; Helvering v. Schine Chain Theatres, Inc., 2 Cir., 1941, 121 F.2d 948; S. Rossin & Sons, Inc. v. Commissioner, 2 Cir., 1940, 113 F.2d 652; Hull v. Commissioner, 4 Cir., 1937, 87 F.2d 260; Helvering v. Brooklyn City R. Co., 2 Cir., 1934, 72 F.2d 274; see 10 Mertens, supra, § 60.03. In the Brooklyn City R. Co. case, the Commissioner's claim of estoppel was defeated because the facts which he claimed to be misrepresented were available at all times on the books of the taxpayer. The record before us contains several references to the likelihood that respondent knew, or should have known, the true facts surrounding the accrual of petitioner's salaries and the unrestricted availability of these salaries after April, 1932. For example, in 1935 the Commissioner began to contest Chase's tax treatment of accrued salaries for 1932 and 1933, and thus apparently learned of the facts in question before the taxable year 1932 was barred as to Ross. Moreover, E. M. Chase Company always deducted the entire amount of the salaries of Chase and Ross on its corporate return, and the discrepan-

---

[10] After holding that the defense of estoppel, not having been presented before the Board of Tax Appeals, should have been passed by the Circuit Court of Appeals, Mr. Justice McReynolds said, "Furthermore, the facts disclosed give it no support." 297 U.S. at page 109, 56 S.Ct. at page 377, 80 L.Ed. 511.

The Supreme Court has allowed the Treasury to reopen a barred assessment in order to interpose a set-off to a claim for refund but such cases are regarded as unique. E. g., Stone v. White, 1937, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265; Bull v. United States, 1935, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421; R. H. Stearns Co. v. United States, 1934, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647. But cf. Rothensies v. Electric Storage Battery Co., 1946, 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296.

cy between the individual returns and the corporate return was always evident, whether or not it registered on the official consciousness. And, as in the Brooklyn City R. Co. case, the accrued salary accounts of Chase and Ross were always disclosed on the financial statements of the company. A letter from the Internal Revenue Service to the company, dated December 29, 1933, shows indisputably that respondent knew of the accrued salaries and of petitioner's tax treatment of them. This letter, written when the taxable year 1932 was still open, reveals full knowledge on the part of respondent of the operations of the company, including the gradual retirement of Chase's preferred stock. Under these circumstances respondent was justified in relying on Ross's returns for no more than the taxpayer's honest understanding of his liabilities, and it was respondent's duty to make up his own mind as to the taxability of the accrued salaries. Joyce v. Gentsch, supra; Commissioner v. Saltonstall, 1 Cir., 1941, 124 F.2d 110; Helvering v. Schine Chain Theatres, Inc., supra.

■ None of this evidence was contradicted by respondent prior to this appeal. Respondent did not even claim below that petitioner's returns from 1927 through 1932 failed to disclose that salaries were being accrued but not reported, let alone that such information was not available elsewhere to respondent. But even if the evidence does not establish that respondent knew, or should have known, prior to the running of the statute of limitations that Ross's accrued salaries were completely subject to withdrawal by 1932 at least, it seems clear that a party who relies on an estoppel has the burden of proving its component elements, and petitioner is not required to show the absence of any of them. Joyce v. Gentsch, supra; Hull v. Commissioner, supra; Helvering v. Brooklyn City R. Co., supra; see 10 Mertens, supra, § 60.03. But cf. Commissioner v. Liberty Bank & Trust Co., 6 Cir., 1932, 59 F.2d 320.

■ A mere failure to report income is not a representation that such income has in fact not been received. Inasmuch as the tax incidence of so many transactions is as doubtful as it is, from the mere failure to report income no more significant inference should be drawn than the taxpayer's own interpretation of the law. And it seems settled that estoppel cannot be predicated upon a mere statement of law or silence resulting from an error of law. Commissioner v. American Light & Traction Co., 7 Cir., 1942, 125 F.2d 365; Commissioner v. Union Pacific R. Co., 2 Cir., 1936, 86 F.2d 637; United States v. Du Pont, D.C.Del., 1942, 47 F.Supp. 894; Sugar Creek Coal & Mining Co., 1934, 31 B.T.A. 344; Tide Water Oil Company, 1934, 29 B.T.A. 1208 (1934).

■ Of course this court may not make findings as to the existence or lack of existence of facts sufficient to raise an estoppel. But even if the Tax Court on reconsideration of this case should find in the record justifiable reliance by the respondent on the petitioner's returns, it is our view that in the absence of either deliberate or unintentional misrepresentation of facts there can be no estoppel. It may be noted that if we were to hold that mere failure to report income results in estoppel and therefore in effect tolls the statute of limitations, we would be rendering virtually meaningless § 275(c) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 275(c), which provides, "If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed * * * at any time within 5 years after the return was filed."

In sum, we hold that the Tax Court erred in attributing to 1939 the disputed items of accrued salary, that if these items were constructively received when earned they cannot be treated as income in any later year, that the doctrine of election is inapplicable to the facts of this case, and, in the absence of misstatement of fact, intentional or otherwise, the petitioner cannot be estopped from asserting that the items were taxable only in the years in which constructively received.

Accordingly, the decision of the Tax Court is reversed and the case remanded to that court for further proceedings in accord with this opinion.