Weldon A. Williamson and Madge S. Williamson v. Commissioner.
Williamson v. Commissioner
Docket No. 4293-66.
United States Tax Court
T.C. Memo 1968-92; 1968 Tax Ct. Memo LEXIS 206; 27 T.C.M. (CCH) 424; T.C.M. (RIA) 68092; May 21, 1968. Filed Madge S. Williamson, pro se, 606 Allview Pl., Laguna Beach, Calif. Brice Tondre, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1963 in the amount of $852.95. The issues for decision are: (1) Whether an amount of $5,749.73 received by petitioners *207 in 1963 constituted back pay for the year 1961 subject to the provisions of section 1303, I.R.C. 1954. [1] 425 (2) In the alternative, if the $5,749.73 did not constitute back pay subject to section 1303, whether that amount was constructively received by petitioners in 1961 and for that reason was income in 1961 rather than in 1963 when paid to petitioners. (3) Whether petitioners are entitled to exclude from their income subject to tax for the year 1963 the amount of $996.48, which represented an amount which petitioner Weldon A. Williamson elected, in accordance with the provision of chapter 73, title 10, U.S. Code, to have withheld from his retired pay from the United States Public Health Service to provide for a survivorship annuity in favor of Madge S. Williamson. Findings of Fact Some of the facts were orally stipulated at the trial and are found accordingly. Petitioners, husband and wife who resided at the time of the filing of the petition in this case in Laguna Beach, California, filed a joint Federal income tax return for the calendar year 1963 with the district director *208 of internal revenue at Los Angeles, California. Income and expenses are reported on this return on a cash receipts and disbursements basis. In 1961 petitioner Weldon A. Williamson retired as medical director in the United States Public Health Service. At the time of his retirement he was stationed in San Francisco, California. In August 1961 he accepted a position as medical director of Golden Rain Foundation, Rossmoor Leisure World, Seal Beach, California. Golden Rain Foundation is a corporation. At the time in 1961 when Weldon A. Williamson became employed as medical director of Golden Rain Foundation, he had an oral understanding with an officer of the corporation that his yearly salary would be $25,000, but that he would accept payment of $800 per month for the first few months in order that Golden Rain Foundation would not have to extend its borrowing capacity. At that time certain moneys of Golden Rain Foundation were impounded awaiting the final closing procedures of the first housing mutuals, and although the corporation was not insolvent, the cash to pay the balance of Williamson's salary was not immediately available and the corporation was attempting to save some interest *209 expense. Under date of January 17, 1962, a letter of agreement was submitted to Weldon A. Williamson on behalf of Golden Rain Foundation stating that the corporation was offering him the appointment as its medical director at an annual salary of $25,000 a year with the corporation furnishing appropriate offices, assistants, equipment, and the like. Under date of January 22, 1962, Weldon A. Williamson signed at the bottom of this letter the statement, "The above appointment is hereby accepted." The amount of $5,749.73 of Weldon A. Williamson's salary from Golden Rain Foundation for the calendar year 1961 was deferred and was paid to him during the calendar year 1963. At the time this payment was made to Williamson, Golden Rain Foundation had received the clearance of the various agencies for the releasing of impounded funds and did not have to seek additional credit. Pursuant to an election under chapter 73, title 10, U.S. Code, Weldon A. Williamson received a reduced amount of retired pay. He was required to include his gross retired pay unadjusted for this reduction in income under section 72, I.R.C. 1954, prior to that section's being amended by Public *210 Law 89-365, 80 Stat. 32, providing for the exclusion from income of such reduction with respect to retired pay received after December 31, 1965. The following amounts were withheld from Williamson's retired pay prior to December 31, 1965, in consideration for a survivorship annuity in favor of Madge S. Williamson: For the last 6 months of 1961, $498.24; for 1962, $996.48; for 1963, $996.48; for 1964, $996.48; and for 1965, $996.48. Petitioners on their joint Federal income tax return for the calendar year 1963 reported as salary from Golden Rain Foundation the amount of $25,480.81 with a notation "See bottom of page." They reported as retirement income from the United States Public Health Service the amount of $8,975.82, dividends in the amount of $42, interest in the amount of $688.49, and business income from "Calls on patients, Golden Rain Foundation" in the amount of $220. At the bottom of the first page of their joint income tax return, after computation of the tax using as gross income the items of income above listed, petitioners showed an additional tax of $1,844.72, with the typewritten explanation, "See below (1961)." There was attached to the return a typewritten schedule *211 which read as follows: 426 $5,749.73 of the $31,230.54 received by me from Golden Rain Foundation during 1963 is BACK PAY for the year 1961, at which time the Foundation was being organized and funds were short. Total amount received in 1963
$31,230.54
Back pay for the year 1961 5,749.73
$25,480.81
Total salary, wages, etc. from #9, page 1, of 1961 return
$17,860.54
Deductions 2,811.67
$15,048.87
Pay, due in 1961 but not received until 1963 5,749.73
$20,798.60
Exemptions 1,800.00
$18,998.60
Taxes on $18,998.60
$4,939.32
Taxes paid in 1961 3,094.60
$1,844.72
Balance of taxes due for 1961
$1,844.72
Respondent in his notice of deficiency increased petitioners' income as reported for the year 1963 by $5,749.73 with the explanation: It has been determined that the Income From Back Pay provisions of Section 1303 of the 1954 Internal Revenue Code are not available to you in the computation of your income tax liability. Accordingly, income is increased in the amount of $5,749.73. Opinion Section 1303, I.R.C. 1954, applicable to the calendar year 1963 *212 [2] and prior years, provided that if the amount of back pay as defined in that section received by an individual during the taxable year exceeded 15 percent of the gross income of the individual for that year, the part of the tax attributable to the inclusion of such back pay in gross income for the taxable year shall not be greater than the aggregate of the increases in the tax which would have resulted from the inclusion of such back pay in gross income for the taxable years to which attributable. *213 From the figures set forth in our findings of fact, it is apparent that the total gross income of petitioners for the calendar year 1963, including the $5,749.73 of pay received in that year by Weldon A. Williamson for services he had rendered to Golden Rain Foundation in 1961, total $41,156.85. It is likewise apparent that the $5,749.73 which petitioners received in 1963 for services rendered by Weldon A. Williamson in 1961 is less than 15 percent of the total gross income which petitioners received in 1963. Therefore, the provisions of section 1303 are not applicable to petitioners in this case even if the amount received by Weldon A. Williamson could be considered to otherwise meet the definition of back pay contained in section 1303(b). Petitioners at the time of the trial of this case and on brief contend that the $5,749.73 paid to Weldon A. Williamson in 1963 was constructively received by him in 1961. Petitioners rely on Ross v. Commissioner, 169 F. 2d 483 (C.A. 1, 1948), reversing a Memorandum Opinion of this Court. Petitioners contend that Ross v. Commissioner, supra, holds that salary earned by an employee of a corporation in constructively received *214 by that employee in the year earned unless the corporation is insolvent or in bankruptcy. We do not agree with petitioners' contention as to the holding of Ross v. Commissioner, supra. In our view, all that Ross v. Commissioner, supra, holds is that the doctrine of constructive receipt can be asserted by a taxpayer in an effort to defeat a determination by the Commissioner that an amount earned in a prior year is taxable in a later year. The Government in Ross 427 v. Commissioner, supra, took the position that since the taxpayer had not reported the income there in dispute in the prior years when the amounts were credited to his account, he was estopped from contending that such income was constructively received in the prior years. The Court in that case pointed out that in order to sustain his contention that the income was constructively received in prior years, the taxpayer would have to show that the amounts were available to him without restrictions and subject to his free command in those years although not reduced to his possession. Petitioners argue that Weldon A. Williamson agreed only to wait until the end of 1961 to receive *215 the balance of the pay due him for 1961 and that there was no substantial restriction on the payment of the $5,749.73 by Golden Rain Foundation to Weldon A. Williamson during the calendar year 1961. Petitioners rely in support of their position on the testimony of Madge S. Williamson to the effect that her husband should have received a $25,000-a-year salary in 1961, that his position was a new position, that since they had just moved from San Francisco they could have used the money, and that they expected it before the end of the year but did not receive it. She stated that her husband said "it was a verbal agreement that he would receive it within 1961." The letter which was received in evidence without objection by respondent from an officer of Golden Rain Foundation stated that Williamson agreed to accept $800 per month for the first few months in order to keep the corporation from having to extend its borrowing capacity while certain of its funds were impounded and that at the time Williamson was paid his back pay the corporation had received clearances from the various agencies for the releasing of the impounded funds. Considering the understanding that the representative *216 of Golden Rain Foundation had as to the agreement with Williamson and the fact that the amount was not actually paid to Williamson until 1963, we consider the weight of the evidence to support the conclusion that Williamson's agreement with Golden Rain Foundation was that the amount of salary due him in excess of $800 a month would not be paid to him until the problem of the impounded funds of Golden Rain Foundation had been resolved. In view of our interpretation of the facts, it is apparent that Williamson's agreement with respect to the year 1961 was for a current salary payment of $800 per month with the difference between the amount of such monthly payments and a $25,000-a-year salary to be paid to him at a future date after the Foundation had resolved the question of its impounded funds. Weldon A. Williamson did not testify at the trial. We conclude that under Williamson's agreement with Golden Rain Foundation, the $5,749.73 was not available to him without restriction in 1961. We do not interpret the statement in the letter from the officer of Golden Rain Foundation that "If you had demanded your additional income in 1961, we could have paid it" to mean, as petitioners contend, *217 that there was no substantial restriction on the payment of $5,749.73. There is nothing in the record to indicate that Golden Rain Foundation would have employed Williamson in 1961 if he had not agreed to accept $800 a month of current payment for the first several months of his employment. The written contract which has been put in evidence was entered into in January 1962. There is no indication in the record that Williamson at any time informed any representative of Golden Rain Foundation that he had any understanding that any amount in addition to $800 per month was to be paid to him in 1961 rather than at a later date. The statement, "If you had demanded your additional income in 1961, we could have paid it" is an indication that Williamson did not in 1961 inform representatives of Golden Rain Foundation that he interpreted his agreement with them to be that the additional salary would be paid to him before the end of the year 1961. As we stated in C. E. Gullett, 31 B.T.A. 1067, 1069 (1935): It is clear that the doctrine of constructive receipt is to be sparingly used; that amounts due from a corporation but unpaid, are not to be included in the income of an individual *218 reporting his income on a cash receipts basis unless it appears that the money was available to him, that the corporation was able and ready to pay him, that his right to receive was not restricted, and that his failure to receive resulted from exercise of his own choice. Here, Williamson's right to receive the extra $5,749.73 was restricted in 1961 by his agreement with Golden Rain Foundation and therefore the amount was not constructively received by him in 1961. 428 Since petitioners report their income on a cash receipts basis, the $5,749.73 is includable in their income in 1963, the year the amount was received. The final issue concerns petitioners' right to exclude from taxable income in 1963 the $996.48 which was withheld from Williamson's retired pay in consideration for a survivorship annuity in favor of Madge S. Williamson. This issue was raised in the petition. The parties agree that under the provisions of section 72 prior to its amendment, effective as to retired pay received after December 31, 1965, petitioners were required to include the $996.48 in their taxable income. When section 72 was amended to provide for the exclusion of amounts withheld from uniformed *219 services retired pay received after December 31, 1965, a provision was added to the Code, Section 122, [3] that in the case of a member or former member of the Uniformed Services of the United States who has made an election under chapter 73, title 10, U.S. Code, to receive a reduced amount of retired pay, all amounts received as such after December 31, 1965, shall be excluded from gross income until there has been excluded an amount equal to the total amount of the reductions before January 1, 1966, in the taxpayer's retired pay made by reason of an election under chapter 73, title 10, U.S. Code. *220 Petitioners argue that in their case the adjustment provided for in section 122 is inequitable since after December 31, 1965, their income tax bracket was lower than it was in the year 1965 and the 4 years prior thereto. Since the amount of reduction in Williamson's retired pay was taxable income in accordance with the provisions of law in effect during the years 1961 through 1965, petitioners are required to include the amount in income in those years. If no provision had been made at all for an exclusion from retired pay in later years, petitioners would still be governed by the law applicable to the years in which income was received and required to include the amount in income. The fact that an exclusion was allowed by Statute in later years does not cause petitioners to be entitled to any form of relief other than that given by the statute. We therefore conclude that petitioners are not entitled to exclude the $996.48 withheld from Williamson's retired pay in 1963 from their taxable income for that year. Decision will be entered for respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. SEC. 1303. INCOME FROM BACK PAY. [prior to amendment by Sec. 232(a) of P.L. 88-272] (a) Limitation on Tax. - If the amount of the back pay received or accrued by an individual during the taxable year exceeds 15 percent of the gross income of the individual for such year, the part of the tax attributable to the inclusion of such back pay in gross income for the taxable year shall not be greater than the aggregate of the increases in the taxes which would have resulted from the inclusion of the respective portions of such back pay in gross income for the taxable years to which such portions are respectively attributable, as determined under regulations prescribed by the Secretary or his delegate. (b) Definition of Back Pay. - For purposes of this section, the term "back pay" means amounts includible in gross income under this subtitle which are one of the following - (1) Remuneration, including wages, salaries, retirement pay, and other similar compensation, which is received or accrued during the taxable year by an employee for services performed before the taxable year for his employer and which would have been paid before the taxable year except for the intervention of one of the following events: * * * For years ending after December 31, 1963, sections 1301 through 1305 providing for income averaging replaced sections 1301 through 1307 applicable to prior years providing for various adjustments having some of the effects of income averaging.↩
3. SEC. 122. CERTAIN REDUCED UNIFORMED SERVICES RETIREMNT PAY. (a) General Rule. - In the case of a member or former member of the uniformed services of the United States who has made an election under chapter 73 of title 10 of the United States Code to receive a reduced amount of retired or retainer pay, gross income does not include the amount of any reduction after December 31, 1965, in his retired or retainer pay by reason of such election. (b) Special Rule. - (1) Amount excluded from gross income. - In the case of any individual referred to in subsection (a), all amounts received after December 31, 1965, as retired or retainer pay shall be excluded from gross income until there has been so excluded an amount equal to the consideration for the contract. The preceding sentence shall apply only to the extent that the amounts received would, but for such sentence, be includible in gross income. (2) Consideration for the contract. - For purposes of paragraph (1) and section 72(o), the term "consideration for the contract" means, in respect of any individual, the sum of - (A) the total amount of the reductions before January 1, 1966, in his retired or retainer pay by reason of an election under chapter 73 of title 10 of the United States Code, and * * *↩