BADGER MATERIALS, INC., ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT*

Docket Nos. 88818, 89942–89947, 94219. Filed July 10, 1963.

---

[1] Proceedings of the following petitioners are consolidated herewith: Stanley Mashuda, Docket No. 89942; Bernie Mashuda, Docket No. 89943; Frank Mashuda, Docket No. 89944; Josephine Mashuda, Docket No. 89945; H. M. Nelson, Docket No. 89946; J. A. Gallagher, Docket No. 89947; and Arthur Overgaard, Docket 94219.

* Opinion withdrawn in part and modified by Supplemental Opinion at 1061.

*W. Wade Boardman*, *Thomas G. Ragatz*, and *Charles E. Prieve*, for the petitioners.

*Vernon R. Balmes*, for the respondent.

DAWSON, *Judge:* Respondent determined deficiencies in income tax of Badger Materials, Inc., in the amounts of $43,965.07 and $52,221.01 for the taxable years ended October 31, 1955, and October 31, 1956, respectively. Respondent further determined transferee liability against each individual petitioner as a transferee of assets of the corporation.

Petitioners in Docket No. 88818, Badger Materials, Inc., and Docket No. 94219, Arthur Overgaard, whose transferee liability was determined to be in the entire amount of the deficiencies of the corporation as set out above, have moved to dismiss the proceedings against them for lack of jurisdiction. Petitioners, as used hereinafter, will refer only to the movants.

The question to be determined is whether the statute of limitations bars the assessment of the deficiencies and transferee liability against petitioners.

### FINDINGS OF FACT

Badger Materials, Inc. (hereinafter referred to as Badger), was incorporated under chapter 180 of the laws of the State of Wisconsin on November 1, 1954. Federal income tax returns of Badger for its taxable years ended October 31, 1955, and October 31, 1956, were filed on April 14, 1956, within a 90-day extension of time, and January 16, 1957, respectively, with the district director of internal revenue, Milwaukee, Wis. (hereinafter referred to as district director).

A resolution and plan for liquidation and dissolution of Badger was adopted at a special meeting of the stockholders on October 31, 1956. A Form 966, statement of intent to liquidate, was filed by Badger on November 26, 1956, with the district director. A statement of intent to dissolve was filed with the secretary of state of Wisconsin on January 14, 1957, and recorded with the register of deeds of Dane County, Wis., on January 17, 1957. At the time of the filing and recording of the statement of intent to dissolve, and at all times relevant herein, the officers of Badger were Frank Mashuda, president, Arthur Overgaard, vice president, and J. A. Gallagher, secretary-treasurer. These three individuals also constituted the board of directors and were the principal stockholders.

During its fiscal year ended October 31, 1957, Badger distributed all of its assets and cash from sales of assets to its stockholders pursuant to the plan for complete liquidation of the corporation, and

within 12 months after the adoption of the plan of complete liquidation pursuant to section 337 of the 1954 Code. The final distribution was made on October 29, 1957, at which time Arthur Overgaard (hereinafter referred to as Overgaard), owning 50 shares of capital stock representing 33⅓ percent of the outstanding stock, received cash and assets in the amount of $239,224.34.

Articles of dissolution were executed by Badger on October 29, 1957, and were filed with the secretary of state of Wisconsin on October 31, 1957, and recorded with the register of deeds for Dane County, Wis., on November 4, 1957. A certificate of dissolution was issued by the secretary of state of Wisconsin on that date.

On December 30, 1957, J. A. Gallagher (hereinafter referred to as Gallagher) signed, as secretary of Badger, the Federal income tax return of Badger for its taxable year ended October 29, 1957. Attached to the return was a statement that Badger had been liquidated and dissolved pursuant to the plan for dissolution adopted by the corporation's shareholders on October 31, 1956, and an analysis of the disposition of fixed assets. Filed with the return and executed by Gallagher as secretary and treasurer of Badger was an application for tentative carryback adjustment (Form 1139). In the application Badger claimed that it realized a net operating loss for the taxable year ended October 29, 1957, in the amount of $20,091.59, which should be allowed as a net operating loss deduction in the taxable year ended October 31, 1955, and that its income tax for that year should be reduced by $10,447.63. (In his informal conference letter dated September 16, 1959, and in the statutory notice of deficiency to Badger, respondent disallowed part of the net operating loss deduction. This disallowance was alleged as error in the petition of Badger.)

In a letter dated November 26, 1958, the district director transmitted a consent Form 872 purporting to extend the period of limitations for the assessment of income tax for the year ended October 31, 1955, to June 30, 1959, to Badger in care of Donald E. Gill & Co. On or about December 29, 1958, Gallagher, designating himself and signing as "Treasurer at date of Liquidation," executed the consent in the name of Badger.

In like manner, on or about March 21, 1959, Gallagher executed a second consent Form 872 purporting to extend the period of limitations for the year ended October 31, 1955, to June 30, 1960. Attached to the form, sent to the district director by Donald E. Gill & Co., was a letter signed by John B. White for Gill & Co. which read as follows:

In answer to a request directed to Mr. Vetter dated March 13, 1959, there is enclosed in triplicate Form 872 for Badger Materials, Inc., which has been executed by the taxpayer. This form extends until June 30, 1960 the period for examination of the taxable year ended October 31, 1955.

On June 17, 1959, Badger "having been dissolved on October 29, 1957, operating under section 180.787 of Wisconsin Statutes," executed a power of attorney to Donald E. Gill, John B. White, and Rockne G. Flowers empowering them to negotiate income tax matters and to sign petitions, applications, appeals, waivers, relinquishments, and other necessary documents.

Shortly prior to September 1, 1959, Gallagher executed as "Treasurer at Date of Liquidation" a consent Form 872 purporting to extend the period of limitations for the year ended October 31, 1956, to June 30, 1960. Gill & Co. transmitted the executed consent to respondent on September 1, 1959.

Gallagher had custody of the corporate seal of Badger until November 4, 1957. After that time and at the times the consent agreements were executed, all corporate records and the corporate seal were in the possession of Gill & Co.

John B. White, who was a partner in Gill & Co. and who had been furnishing information to the revenue agent making the audit of Badger, asked Gallagher to sign the consent agreements. White discussed the execution of the consents with the accountants of Gallagher and Frank Mashuda, president of Badger. Gallagher did not discuss the consents with the other officers. He ordinarily signed returns and other such instruments while Badger was in existence. Neither Gallagher nor White were lawyers and no legal advice was obtained concerning the authority of Gallagher to execute the consents under Wisconsin law.

An informal conference notice was mailed to Badger in care of Gill & Co. on September 16, 1959, and on September 18, 1959, an informal conference was held. Donald E. Gill purported to represent Badger. Depreciation adjustments for the taxable years ended October 31, 1955, October 31, 1956, and October 29, 1957, were discussed.

On June 2, 1960, respondent issued a statutory notice of deficiency to Badger, in care of Gill & Co., asserting depreciation adjustments for the taxable years ended October 31, 1955, October 31, 1956, and October 31, 1957. On August 31, 1960, Badger filed a petition with this Court which was verified by Gallagher as follows:

J. A. Gallagher, being duly sworn, says that he was Treasurer of Badger Materials, Inc., at the time of the dissolution of such corporation and if the petitioner has any legal existence, is such Treasurer, and if it has legal existence is duly authorized to verify the foregoing petition on behalf of the petitioner above named; * * *

On June 15, 1961, respondent issued a statutory notice of transferee liability to Arthur Overgaard asserting his liability as a transferee of assets of Badger for deficiencies in income tax due from said transferor for the taxable years ended October 31, 1955, and October 31,

1956.[2] No consent for extension of the period of limitation for assessment of transferee liability was ever signed or filed by Overgaard.

OPINION

The issues to be decided are (1) whether the notice of deficiency to Badger was timely so that assessment of such deficiency is not barred by the statute of limitations, and (2) whether the notice of transferee liability to Overgaard for the tax deficiency of Badger was timely so that assessment of transferee liability is not barred by the statute of limitations.

The period of limitation for assessment against a taxpayer under section 6501(a) of the 1954 Code[3] is 3 years after the return is filed, except where the Commissioner and the taxpayer have consented in writing, prior to the expiration of the period prescribed by section 6501(a), to assessment after such time. If the consent is properly executed, section 6501(c)(4)[4] provides that the tax may be assessed at any time prior to the expiration of the period agreed upon, which period may also be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. Section 6901(c)(1)[5] provides that the period of limitation for assessment of transferee liability is within 1 year after the expiration of the period of limitation for assessment against the transferor. The established rule is further that the 1-year extension for the assessment of transferee liability begins at the expiration of the original period of limitation for assessment against the transferor *as properly extended by consents of the transferor*. *Ann C. Field*, 32 T.C. 187 (1959), affirmed per curiam 286 F. 2d 960 (C.A. 6, 1960), certiorari denied 366 U.S.

---

[2] Notices of transferee liability were mailed to the other transferees of Badger on August 16, 1960.

[3] SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION.

(a) GENERAL RULE.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

[4] SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION.

(c) EXCEPTIONS.—

\*       \*       \*       \*       \*       \*       \*

(4) EXTENSION BY AGREEMENT.—Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

[5] SEC. 6901. TRANSFERRED ASSETS.

(c) PERIOD OF LIMITATIONS.—The period of limitations for assessment of any such liability of a transferee or a fiduciary shall be as follows:

(1) INITIAL TRANSFEREE.—In the case of the liability of an initial transferee, within 1 year after the expiration of the period of limitation for assessment against the transferor;

949 (1961); *James M. Denton*, 21 T.C. 295 (1953); *Anne Gatto*, 20 T.C. 830 (1953); *W. O. Menger*, 17 B.T.A. 998 (1929).

The income tax returns for Badger for the years ended October 31, 1955, and October 31, 1956, were filed on April 14, 1956, and on January 16, 1957, respectively. Without valid consents the statutory periods for assessment would have expired on April 14, 1959, and January 16, 1960, respectively. Two consents to extend the period for assessment for the year ended October 31, 1955, were executed by J. A. Gallagher on December 29, 1958, purporting to extend the period for assessment to June 30, 1959, and on March 21, 1959, purporting to extend the period to June 30, 1960. For the year ended October 31, 1956, Gallagher executed a consent on September 1, 1959, purporting to extend the assessment period to June 30, 1960.

The notice of deficiency for the years in issue was mailed to Badger on June 2, 1960, within the period of limitations as purportedly extended. A notice of transferee liability was sent to Overgaard on June 15, 1961, within 1 year of the expiration of the assessment period as extended. Therefore, if the consents executed by Gallagher were valid, the notices of deficiency and transferee liability were timely. Petitioners deny the validity of the consents because of their execution after the corporation dissolved.

It is not disputed that the length of the period of time that a corporation continues to exist as a body corporate depends upon the law of the State where the corporation was created. *Title Co.* v. *Wilcox Bldg. Corp.*, 302 U.S. 120 (1937). The controversy stems from the interpretation of the applicable Wisconsin statutes.

Wisconsin statutes provide for what has been termed a "two-phase" dissolution procedure. Under Wis. Stat. Ann. sections 180.755 and 180.757 (1955), a corporation files and records a statement of intent to dissolve and then proceeds to collect its assets, convey and dispose of such properties not distributable in kind, discharge its liabilities, do all other acts required to liquidate its business and affairs, and distribute the remainder of its assets among its shareholders. After the liquidation has been completed, the corporation files and records its articles of dissolution. Section 180.767 provides that "thereupon the existence of the corporation shall cease, except for the purpose of suits, other proceedings and appropriate corporate action of shareholders, directors and officers as provided in this chapter." Further provisions of chapter 180 relating to suits, proceedings, and appropriate corporate action are found in section 180.787:

### Survival of remedy after dissolution

The dissolution of a corporation shall not take away or impair any remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing or any liability incurred, prior to such dissolution if

suit or other proceeding thereon is commenced within 2 years after the date of such dissolution. Any such suit or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors and officers shall have power to take such corporate or other action as shall be appropriate to protect such remedy, right or claim. If such corporation was dissolved by the expiration of its period of duration, such corporation may amend its articles of incorporation at any time during such period of 2 years so as to extend its period of duration.

While the parties have cited cases under prior Wisconsin statutes (comparable to the present voluntary dissolution provisions in the majority of other States), which made liquidation and winding up a postdissolution power rather a predissolution power, we have found no cases construing the present Wisconsin statutes. Nor have we been aided by adjudications in other States having similar statutes. As we interpret the Wisconsin provisions, the corporation's existence terminates upon dissolution except for the limited purpose of bringing or defending suits or proceedings that are commenced within 2 years from the date of dissolution.

Although respondent contends that the filing of consents constitutes "appropriate corporate action of shareholders, directors and officers *as provided in this chapter*" (emphasis supplied), we do not think so broad a construction would be in keeping with the clear intent of the statutory language used. The words "as provided in this chapter" clearly modify "appropriate corporate action" and limit such action to that provided for in other provisions of chapter 180. Corporate powers of a dissolved corporation and its officers are found in section 180.768, relating to property omitted from final distribution, which is not applicable here. Section 180.787 pertains to the survival of remedies after dissolution. The power which is given to shareholders, directors, and officers by section 180.787 is "to take such corporate or other action as shall be appropriate to protect *such* remedy, right or claim." (Emphasis supplied.) Because of the use of the word "such," the most logical way to construe this provision is that the power of shareholders, directors, and officers to act is restricted to the protection of remedies, rights, and claims upon which suits or other proceedings are commenced within 2 years after the date of dissolution, and not the protection of "potential litigation" as contended by respondent. Any other construction would be contrary to the unambiguous words of the statute.

Therefore, the validity of the consents in issue rests on the ultimate question of whether the corporation was kept in existence because of the commencement of a suit or other proceeding within 2 years after the date of its dissolution.

It is clear from this Court's decision in *Wheeler's Peachtree Pharmacy, Inc.*, 35 T.C. 177 (1960), acq. 1961–2 C.B. 5, that the filing of successive consents does not constitute the beginning of a suit, action,

or proceeding. Respondent, agreeing that there must be something more than the execution of consent waivers to commence a suit or proceeding, argues that a proceeding was commenced by Badger within 2 years by the filing of an application for tentative carryback adjustment for the taxable year ended October 29, 1957, to the taxable year ended October 31, 1955, and that the disallowance of part of the net operating loss deduction for the taxable year ended October 31, 1955, in the informal conference letter dated September 16, 1959, was an integral part of the "administrative proceeding." The only authority cited for this position is *American Stand. Watch Co. v. Commissioner*, 229 F. 2d 672 (C.A. 2, 1956), reversing Tax Court orders, where it was held that the taxpayer's claim for refund of excess profits taxes constituted the commencement of a proceeding. Respondent's reliance on this case is misplaced. The filing of an application for a tentative carryback adjustment does not constitute the filing of a claim for credit or refund. Sec. 1.6411–1(b)(2), Income Tax Regs. Since *American Stand. Watch Co.* involved a claim for a refund, as opposed to an application for a tentative carryback adjustment, and concerned the excess profits tax, it is clearly distinguishable from the present controversy. We have found no other authority on this point and it is our conclusion that this contention is not meritorious.

Nor do we find that a "proceeding" was commenced against the corporation by the issuance of an informal conference letter and the conference which followed, as contended by respondent. Such administrative activities are merely procedural matters preliminary to the commencement of a suit or proceeding. As of the end of the 2-year period following the dissolution of the corporation, the parties had proceeded no further than to discuss the examining officer's proposed adjustments as set forth in respondent's informal conference letter.

The case of *Ann C. Field, supra*, involved the issue as to whether consents extending the periods of limitations for assessments executed after the dissolution of the corporation were valid. Summarized, the procedural events that occurred after the corporation had dissolved but during a 3-year winding-up period were as follows: 30-day letters were issued and protests filed thereto, waivers of restrictions on assessments and consents to the assessment and collection of the deficiencies were executed, the deficiencies were assessed, payment was demanded, and an offer of compromise was made. On these facts, this Court held that a proceeding was commenced, thereby extending the existence of the corporation beyond the 3-year winding-up period. Having found that the corporate existence was extended, we concluded that the consents were valid.

There is no evidence that any of the above actions were taken by the parties in this case. Furthermore, the Michigan statute involved

in the *Field* case provides for a postdissolution winding-up period during which time the corporation and its officers are empowered to "settle and close their affairs and to dispose of and convey their property and to divide their assets." This is in sharp contrast to the Wisconsin statute which provides for predissolution winding up and cessation of the corporation except for suits or proceedings that are commenced within 2 years after the date of its dissolution.

We conclude that no suit or proceeding was commenced within 2 years after dissolution and that the existence of the corporation ceased for all purposes on November 4, 1959. While the end of Badger's corporate existence did not extinguish its Federal tax liability or its shareholders' transferee liabilities, or even limit the statutory period for assessment, it is nevertheless determinative of the power of the officers, directors, and shareholders of the corporation to act in regard to such liability. However, we think the Wisconsin statute limits the power of such persons to perform those actions relating to remedies, rights, and claims upon which a suit or proceeding is commenced within 2 years after dissolution. It therefore follows that the directors and officers, so limited in power, could not clothe their agent, Donald E. Gill & Co., accountants, with any greater power than they themselves possessed. In view of this, we hold that the consents were invalid and ineffective to extend the statutory periods for assessment beyond 3 years from the date of filing the returns for the transferor's liability and beyond 1 year thereafter for the transferee's liability.

Respondent's alternative contention, raised in his amended answer, is that, even assuming *arguendo* that there was no authority to execute the waivers, petitioners are estopped to deny their validity. In this connection respondent asserts that he relied on the validity of the consents as evidenced by the fact that the notices of deficiency and transferee liability were not issued until after the statutory periods for assessment had expired. Assuming this to be so, was such reliance reasonable? Upon what misrepresentation or error of fact did respondent rely? Clearly, there was no lack of knowledge of Badger's dissolution. On November 26, 1956, Badger filed a Form 966 informing respondent of its adoption of a plan of dissolution to be carried out by October 31, 1957. The articles of dissolution were filed with the secretary of state of Wisconsin and recorded in the office of the register of deeds for Dane County, Wis., on November 4, 1957, thus becoming a matter of public record. Badger's final income tax return filed for the period ended October 29, 1957, included a statement concerning the liquidation, a copy of the minutes of the stockholders meeting adopting the plan of dissolution, and an analysis of the disposition of fixed assets. And finally, the consent forms were executed by Gallagher as "Treasurer at Date of Liquidation." Compare these

facts with the cases of *Lucas* v. *Hunt*, 45 F. 2d 781 (C.A. 5, 1930), and *Ruby Y. Lloyd*, 29 B.T.A. 74 (1933), cited by respondent, where the Commissioner had not been officially notified of the taxpayers' dissolutions prior to acceptances of consents and the taxpayers were thus held to be estopped from denying the validity of the consents.

All of the relevant facts here were known to respondent and he was charged with knowledge of the law. In view of these factors, it was a question of law whether the consents in question were valid. Is the taxpayer any more responsible for a correct interpretation of the law than the Commissioner? We are convinced by the evidence of record that Gallagher acted in good faith in signing the consents and that his actions were not for the purpose of inducing respondent to withhold action leading to the issuance of the notices of deficiency and transferee liability. But, in so acting, he assumed a power not authorized by Wisconsin law. Respondent, relying either on his own interpretation of the law or that of petitioners, chose to take no further immediate action. In our opinion both parties misinterpreted the Wisconsin statute. A mutual mistake of law does not create an estoppel. *Crosley Corporation* v. *United States*, 229 F. 2d 376 (C.A. 6, 1956); *Ross* v. *Commissioner*, 169 F. 2d 483 (C.A. 1, 1948); *Commissioner* v. *American Light & T. Co.*, 125 F. 2d 365 (C.A. 7, 1942), affirming 42 B.T.A. 1121 (1940); *Manhattan Building Co.*, 27 T.C. 1032 (1957); *Tide Water Oil Co.*, 29 B.T.A. 1208 (1934).

The burden of proving estoppel is upon the party alleging it. Respondent has failed to show a misrepresentation or concealment of a material fact, or that any facts were unknown to him, or that he relied on anything but a misinterpretation of law. Moreover, the issuance of the notice of transferee liability to petitioner Overgaard almost a year after notices were sent to the other transferees and 10 months after the petition of Badger was filed with this Court, wherein the validity of the consents was denied, is more indicative of lack of diligence than reliance on the purported consents.

Having found that no one had authority under Wisconsin law to extend the statutory period for assessment as to the dissolved corporation and that petitioners are not estopped to deny the validity of the consents, a discussion of Gallagher's normal scope of authority as secretary and treasurer of Badger and his power to act without the consent of the other officers and directors becomes unnecessary.

Since it is our view that the corporation ceased to exist for all purposes 2 years from the date of dissolution, it also follows that no one had the capacity thereafter to file a petition on behalf of the corporation. However, questions of jurisdiction are fundamental, and whenever it appears that this Court may not have jurisdiction to entertain the proceeding, that question must be decided.

While the remaining transferees of Badger, whose proceedings are consolidated herewith, have made no motions to dismiss for lack of jurisdiction, we have on our own examined the jurisdiction of this Court to entertain the proceedings against all the transferees for the deficiency of Badger for the year ended October 31, 1955. Having held the consents to be invalid, the period for assessment of transferee liability for the year ended October 31, 1955, expired on April 14, 1960. The notices of transferee liability to all transferees other than Overgaard were mailed on August 16, 1960, and were, therefore, untimely.

*Appropriate orders will be entered.*