# United States Tax Court

REVIEWED
165 T.C. No. 1

JM ASSETS, LP, A-A-A STORAGE, LLC, PARTNERSHIP
REPRESENTATIVE,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 2531-24.                                  Filed July 2, 2025.

————————

P is a partnership subject to the audit and litigation procedures of section 6221 et seq. as established by the Bipartisan Budget Act of 2015, Pub. L. No. 114-74, 129 Stat. 584. Under those procedures, at the conclusion of the examination of a partnership return, R calculates an imputed underpayment. Within 270 days of notification of the amount of a proposed imputed underpayment, a partnership may submit a request for modification of that amount. In the case of any modification, the period within which R may make a final partnership adjustment remains open for at least 270 days "after the date on which everything required to be submitted . . . is so submitted." I.R.C. § 6235(a). Treas. Reg. § 301.6235-1(b)(2)(A) defines "the date on which everything required to be submitted . . . is so submitted" to be the date the period during which a partnership may request modification ends.

On June 9, 2022, R notified P of the amount of an imputed underpayment. P submitted everything required to be submitted for a modification request 250 days later, on February 14, 2023. R made an adjustment 290 days after P's request, on December 1, 2023.

**Served 07/02/25**

Pending before the Court are cross-motions disputing whether R's adjustment was timely. P argues that the period for adjustment expired 270 days after it submitted its modification request. Relying on his regulation, R argues that the period for adjustment did not expire until 270 days after the close of the period during which P could request modification.

*Held*: When a regulation attempts to change an unambiguous provision of a statute, the regulation falls outside the boundaries of any rulemaking authority that Congress may have delegated. *See Varian Med. Sys., Inc. & Subs. v. Commissioner*, 163 T.C. 76, 107 (2024).

*Held, further*, to the extent Treas. Reg. § 301.6235-1(b)(2)(A) holds the period of adjustment open longer than I.R.C. § 6235(a)(2), it is contrary to the statute.

*Held, further*, the extended period of limitations for a substantial omission of income under section 6235(c)(2) does not apply when the taxpayer adequately discloses the nature and amount of the omitted income.

*Held, further*, P adequately disclosed the nature and amount of the income R asserts was omitted.

*Held, further*, R's Notice of Final Partnership Adjustment is untimely.

BUCH, *J.*, wrote the opinion of the Court, which URDA, *C.J.*, and KERRIGAN, NEGA, PUGH, ASHFORD, COPELAND, JONES, TORO, GREAVES, MARSHALL, WEILER, WAY, LANDY, ARBEIT, GUIDER, JENKINS, and FUNG, *JJ.*, joined.

————

*Thomas A. Cullinan*, *Larry Alan Campagna*, and *Samuel T. Kuzniewski*, for petitioner.

*Brooke N. Stan*, *Sheila R. Pattison*, *Bethany E. Ortiz*, and *Judy M. Tejeda-Gonzales*, for respondent.

3

## OPINION

BUCH, *Judge*: JM Assets, LP (JM Assets), is a limited partnership and is treated as a partnership subject to the Bipartisan Budget Act of 2015 (BBA), Pub. L. No. 114-74, § 1101(a), (g), 129 Stat. 584, 625, 638. In 2018, JM Assets engaged in several transactions to dispose of real property it owned, and it reported those transactions on its 2018 Form 1065, U.S. Return of Partnership Income. The Commissioner adjusted JM Assets' income by increasing the net section 1231[1] gain from those sales.

Pending before the Court are four Motions. The first is the Commissioner's Motion for Partial Summary Judgment, in which he asks the Court to conclude that the Notice of Final Partnership Adjustment (FPA) for JM Assets' 2018 Form 1065 was timely pursuant to section 6235. The Commissioner relies on Treasury Regulation § 301.6235-1(b)(2), which defines the period the Commissioner has to issue the FPA in the event a partnership requests a modification of an imputed underpayment pursuant to section 6225(c). The second is JM Assets' Motion to Dismiss for Lack of Jurisdiction in which it asks the Court to dismiss the case because the FPA was untimely pursuant to section 6235(a). JM Assets argues the Commissioner's regulation exceeded the authority granted by Congress to interpret section 6235 by extending the period for adjustment provided in the statute. The third and fourth are the Commissioner's Motion for Leave to File Out of Time First Amendment to Answer and Motion for Leave to File First Supplement to Objection to Motion to Dismiss for Lack of Jurisdiction. The Commissioner asks the Court in both of his Motions for leave to amend his pleadings to include the alternative argument that the FPA is not barred by the period of limitations pursuant to section 6235(c)(2). Under section 6235(c)(2), the period of limitations is extended from three years to six years in the case of an omission in excess of 25% of the gross income stated on the return pursuant to section 6501(e)(1)(A).

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are shown in U.S. dollars and rounded to the nearest dollar.

*Background*

The facts described below are derived from the parties' pleadings and Motion papers. *See* Rule 121(c)(1). They are stated solely for the purpose of deciding the pending Motions and are not findings of fact for this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

## I.  *JM Assets and Its Transactions*

JM Assets is a limited partnership with its principal place of business in Texas. JM Assets' primary business is the management of the real property it owns as well as the real property owned by entities in which JM Assets holds ownership interests.

In 2018, JM Assets disposed of real property it owned. It reported these transactions as installment sales on its 2018 Form 1065.

## II.  *JM Assets' 2018 Form 1065*

On September 13, 2019, JM Assets timely filed its 2018 Form 1065 on extension. On that return, JM Assets identified A-A-A Storage, LLC (AAA Storage), as the partnership representative with respect to its 2018 Form 1065.

JM Assets reported the disposition of real property it owned in 2018. It included with its Form 1065 a Form 4797, Sales of Business Property, and several Forms 6252, Installment Sale Income. On its Form 4797, JM Assets reported $403,672 of section 1231 gain from installment sales and $732,566 of section 1231 gain from like-kind exchanges. On the accompanying Forms 6252, in addition to reporting installment sales from prior years, JM Assets reported five properties sold in 2018 with corresponding selling prices. These properties were identified as "Kittyhawk," "Old Lockhart," "M 14.49ac 290W," "7ac US-1," and "FM 2978-51st-Summerfield" and included selling prices of $88,000, $563,065, $1,453,000, $564,000, and $7,329,705, respectively. Those forms also included amounts for basis, various expenses for the sales, gross profit, and ultimately, installment sale income.

## III.  *IRS Examination and Proposed Adjustment*

The Commissioner examined JM Assets' 2018 return. On June 9, 2022, the Commissioner issued a Notice of Proposed Partnership

Adjustment (NOPPA) to JM Assets and its partnership representative. The NOPPA stated an adjustment was required "to increase the partnerships overall section 1231 gain" relating to the "installment sales of five separate properties on the 1065 for 2018 on the 6252." The properties were described in the NOPPA's adjustment explanation using the names and sale prices listed in JM Assets' Forms 6252. The NOPPA states that JM Assets must "recognize current year gain in full on the sale of the partnership properties that were reported." The NOPPA proposed an adjustment of $5,499,437 to net section 1231 gain and an imputed underpayment of $2,034,792.

IV.     *Modification Request and Partnership Adjustment*

On February 14, 2023, JM Assets submitted Form 8980, Partnership Request for Modification of Imputed Underpayments Under Section 6225(c). JM Assets requested a modification of the tax rates for two of its partners. JM Assets did not thereafter supplement its submission, and the Commissioner did not request any additional information. In a letter captioned "Notice of Modification Request Determination" dated June 5, 2023, the Commissioner approved the modifications in full. JM Assets did not file Form 8981, Waiver of the Period Under IRC Section 6231(b)(2)(A) and Expiration of the Period for Modification Submissions Under IRC Section 6225(c)(7), with its Form 8980.

On December 1, 2023, the Commissioner issued an FPA. The FPA determined an imputed underpayment of $2,034,792 relating to adjustments to section 1231 gain. Notwithstanding the June 5, 2023, letter approving the requested modification in full, the FPA contained the same section 1231 gain adjustment and imputed underpayment amounts as detailed in the NOPPA. The FPA also determined an accuracy-related penalty for transactions lacking in economic substance under section 6662(b)(6) and (i) or, in the alternative, a penalty for either negligence or a substantial understatement of income tax under section 6662(b)(1) or (2), respectively.

V.     *Petition and Parties' Competing Motions*

JM Assets, through its Partnership Representative, filed a timely Petition challenging the FPA. In its Petition, JM Assets argues that the FPA is untimely pursuant to section 6235(a)(2) and also challenges the underlying adjustments. At the time the Petition was filed, both JM Assets' and AAA Storage's principal places of business were in Texas.

In his Answer the Commissioner confessed error as to the amounts shown in the FPA but disputed that the FPA was untimely. The Commissioner acknowledged that the amount set forth in the FPA was incorrect, alleging "the amount shown as the imputed underpayment on the cover of the FPAA [sic] is incorrect since it does not take into account the modification request accepted by respondent." As for the timeliness of the FPA, the Commissioner presaged the arguments that would follow in his Motion for Partial Summary Judgment.

Shortly thereafter, the Commissioner filed a Motion for Partial Summary Judgment arguing that the FPA was issued within the period of limitations of section 6235(a)(2). In short, the Commissioner's position is that when he issues an NOPPA setting forth an imputed underpayment, a taxpayer has 270 days within which to seek modification of the amount of the imputed underpayment. In turn, under section 6235(a)(2), the period within which the Commissioner may issue an FPA expires 270 days "after the date on which everything required to be submitted to the Secretary . . . is so submitted." The Commissioner argues that, when a taxpayer seeks modification of the imputed underpayment, the period within which to issue an FPA under section 6235(a)(2) begins running at the conclusion of the period within which modification may be sought under section 6225(c)(7). For this proposition, the Commissioner relies on Treasury Regulation § 301.6235-1(b)(2), which defines the "date on which everything required to be submitted" to be the date the period for the requesting the modification ends.

Under the Commissioner's view, the FPA was timely. The Commissioner mailed a NOPPA to JM Assets on June 9, 2022. The period within which to submit a modification request ended on March 6, 2023. But on February 14, 2023, JM Assets sought a modification of the imputed underpayment. Thus, the Commissioner posits, the period within which to issue an FPA began to run after March 6, 2023 (the end of the period within which to seek modification), and ended on December 1, 2023, the date the Commissioner mailed the FPA underlying this case.

A few days after the Commissioner filed his Motion, JM Assets filed a Motion to Dismiss for Lack of Jurisdiction arguing the FPA was

untimely.[2] Relying on the same facts and Code provisions as the Commissioner, JM Assets argues that the period within which the Commissioner could issue an FPA expired 270 days after it submitted its modification request.

The Commissioner also filed Motions for Leave to File Out of Time First Amendment to Answer and to File First Supplement to Objection to Motion to Dismiss for Lack of Jurisdiction. In both documents, the Commissioner argues that the FPA was timely under section 6235(c)(2). Section 6235(c)(2) extends the period of limitations for a partnership adjustment from three years to six if there is a substantial omission as described in section 6501(e)(1)(A). The Commissioner argues that, by reporting its sales of property as installment sales, JM Assets omitted $5,499,437 of gross income, an amount in excess of 25% of JM Assets' reported gross income of $16,017,287.

JM Assets objects to both of the Commissioner's Motions. JM Assets argues that both Motions should be denied because there was undue delay in filing the Motions and because the alternative argument would be futile. JM Assets argues that section 6235(c)(2) does not apply because it adequately disclosed the transactions giving rise to what the Commissioner argues is omitted income on its Forms 6252.

*Discussion*

Pending before the Court is JM Assets' Motion for Summary Judgment and the Commissioner's Motion for Partial Summary Judgment. We are asked to decide whether the period of limitations to adjust partnership items under section 6235(a) expired before the Commissioner mailed the FPA. To answer this question, we must decide whether Treasury Regulation § 301.6235-1 is valid as applied.

Additionally pending before the Court are the Commissioner's Motion for Leave to File Out of Time First Amendment to Answer and Motion to File First Supplement to Objection to Motion to Dismiss for

---

[2] JM Assets argues that the Court does not have jurisdiction over a BBA partnership action unless the Commissioner has mailed a valid FPA. JM Assets states that dismissal is appropriate here because the FPA was untimely. The statute of limitations is a defense in bar and not a plea to the jurisdiction of this Court. *See Robinson v. Commissioner*, 57 T.C. 735, 737 (1972) (citing *Badger Materials, Inc. v. Commissioner*, 40 T.C. 1061, 1063 (1963), *supplementing* 40 T.C. 725 (1963)). Therefore, we will recharacterize JM Assets' Motion to Dismiss for Lack of Jurisdiction as a Motion for Summary Judgment under Rule 121.

Lack of Jurisdiction. Those Motions ask us to decide whether the Commissioner should be permitted to amend his pleadings to present the alternative argument that the FPA is timely pursuant to section 6235(c)(2) because of a substantial omission of income. To answer this question we may consider the merits of the underlying issue, specifically the likelihood that the Commissioner would prevail on the issue of whether JM Assets made a substantial omission of income for 2018.

We will address these two issues in turn.

I.    *BBA Partnership Audit Procedures*

In 2015, Congress enacted BBA, which repealed the partnership audit provisions of the Tax Equity and Fiscal Responsibility Tax Act of 1982, Pub. L. No. 97-248, 96 Stat. 324. BBA § 1101(a), (c)(1), 129 Stat. at 584, 625. The BBA created a new set of rules for making adjustments that relate to partnership returns for tax years beginning after December 31, 2017. *See* BBA § 1101(g)(1), 129 Stat. at 638. The BBA applies to any entity that is required to file a partnership return under section 6031(a) or that files a partnership return. I.R.C. §§ 6221(a), 6241(1), (8).

An audit under the new procedures begins with the Commissioner's mailing to the partnership and the partnership representative a notice that he has initiated an administrative proceeding. I.R.C. § 6231(a)(1). During the audit, the partnership is the sole party to appear before the Commissioner and is represented by the partnership representative, who has the sole authority to act on behalf of the partnership. I.R.C. § 6223(a). All partners are bound by the actions of the partnership during these proceedings. I.R.C. § 6223(b). The Commissioner determines partnership adjustments, if any, at the partnership level, and any tax attributable to those adjustments is assessed and collected at the partnership level. I.R.C. § 6221(a). Partnership adjustments include any adjustment to a partnership-related item, which includes any item that is relevant in determining the tax liability of any person or a partner's distributive share of any such item. I.R.C. § 6241(2).

To make those adjustments, the Commissioner issues a NOPPA. I.R.C. § 6231(a)(2). The NOPPA includes the adjustments as well as the amount of any imputed underpayment due from the partnership. The imputed underpayment is calculated by applying the highest marginal rate to the net partnership adjustments. I.R.C. § 6225(b). The imputed

underpayment is ultimately assessed and collected in the year of the adjustment, not the year under review. I.R.C. §§ 6225(a)(1), 6232(a); *see also* I.R.C. § 6225(d).

But after the NOPPA and before assessment, the partnership may submit a request to modify the imputed underpayment set forth in the NOPPA. I.R.C. § 6225(c).[3] The partnership has 270 days from the date the Commissioner mails the NOPPA to submit a modification request to the Commissioner. I.R.C. § 6225(c)(7); Treas. Reg. § 301.6225-2(c)(3)(i).

When enacting these provisions, Congress directed the Commissioner to create procedures for modifying imputed underpayments. I.R.C. § 6225(c)(1), (6). Consistent with that directive, the Commissioner has created a procedure whereby a partnership may request a modification by submitting a Form 8980 along with documentation to substantiate the request. *See* IRS Pub. 5346, Instructions for Form 8980, at 1–2 (2020). The Form 8980 instructions list certain required forms that must be attached to the Form 8980 for a complete modification request. *Id.* at 1, 3. The instructions also describe other forms, including Form 8981, that relate to the modification process that may be submitted as "stand-alone forms." *Id.* at 2.[4]

To make his final determination, the Commissioner must mail an FPA to the partnership and partnership representative. I.R.C. § 6231(a)(3). From that FPA, the partnership may file a petition for judicial review with the Tax Court, the Court of Federal Claims, or the district court where the partnership's principal place of business is located. I.R.C. § 6234(a). A petition must be filed within 90 days of the date the FPA is mailed. *Id.* An assessment of an imputed underpayment

---

[3] Modification requests under section 6225(c) may be submitted by partnerships for any of several reasons. Section 6225(c) permits the partnership to submit information to show the Commissioner that an amended return was filed or alternative procedures to filing amending returns were conducted, a partner is tax-exempt, a partner has a lower tax rate, or a publicly traded partnership incurred certain passive activity losses. I.R.C. § 6225(c)(2)-(5). The regulations provide additional grounds for modification such as taking into account the number and composition of imputed underpayments, dividends received from partners who are qualified investment entities, closing agreements, treaty modifications, or other situations not described or anticipated by the statute and regulations. Treas. Reg. § 301.6225-2(d)(6)–(10).

[4] These instructions remain unchanged as of December of 2024. *See* IRS Pub. 5346, Instructions for Form 8980 (2024).

is made after the close of that 90-day period or, if a petition is filed, upon final decision of the court. I.R.C. § 6232(b). The court has jurisdiction to determine all partnership-related items, the proper allocation of such items, and the applicability of any penalty or addition to tax for the year to which the FPA relates. I.R.C. § 6234(c).

II.    *Statute of Limitations for Partnership Adjustments*

There are limitations that govern when the Commissioner must inform a partnership of proposed and final partnership adjustments. Before the Commissioner can issue an FPA, he must first issue a NOPPA. I.R.C. § 6231(b)(2). And once the Commissioner issues the NOPPA, he must generally wait 270 days before issuing the FPA. I.R.C. § 6231(b). *But see* I.R.C. § 6231(b)(2) (allowing the partnership to waive the 270-day period); Treas. Reg. § 301.6231-1(b)(2) (same).

As for when the Commissioner can mail a NOPPA, it must be mailed no later than the period of limitations in section 6235. I.R.C. § 6231(b)(1). Section 6235(a) provides:

> Sec. 6235(a) In general.—Except as otherwise provided in this section or section 905(c), no adjustment under this subchapter for any partnership taxable year may be made after the later of—
>
> > (1) the date which is 3 years after the latest of—
> >
> > > (A) the date on which the partnership return for such taxable year was filed,
> > >
> > > (B) the return due date for the taxable year, or
> > >
> > > (C) the date on which the partnership filed an administrative adjustment request with respect to such year under section 6227, or
> >
> > (2) in the case of any modification of imputed underpayment under section 6225(c), the date that is 270 days . . . after the *date on which everything required to be submitted to the Secretary pursuant to such section is so submitted*, or
> >
> > > (3) in the case of any notice of proposed partnership adjustment under section 6231(a)(2),

> the date that is 330 days . . . after the date of such notice.[5]

(Emphasis added.) Subsection (a) authorizes the Commissioner to make his adjustment any time before the end of the latest of the several time periods set forth in paragraphs (1), (2), and (3). As is relevant here, once the Commissioner issues a NOPPA, he has at least 330 days within which to mail an FPA.[6] If within 270 days of the Commissioner's mailing of the NOPPA the partnership seeks modification of the imputed underpayment under section 6225(c), then the Commissioner may mail an FPA up to 270 days "after the date on which everything required to be submitted to the Secretary pursuant to such section is so submitted."

The Commissioner has defined "the date on which everything required to be submitted . . . is so submitted" by regulation. In promulgating Treasury Regulation § 301.6235-1(b)(2), the Commissioner defined when "everything required to be submitted" is deemed to have been submitted under section 6235(a)(2). The regulation provides:

> (i) In general. For purposes of . . . this section, the date on which everything required to be submitted to the IRS pursuant to section 6225(c) is so submitted is the earlier of—

---

[5] Shortly after enacting the BBA, Congress amended the original period of limitations for making adjustments under section 6235(a)(3) to extend it from 270 days to 330 days. Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, div. Q, § 411(c)(2), 129 Stat. 2242, 3122 (2015). Congress amended the period to

> rectif[y] the unintended conflict between section 6231 (barring the Secretary from issuing the notice of final partnership adjustment earlier than the expiration of the 270 days after the notice of a proposed adjustment) and section 6235 (requiring that a notice of final partnership adjustment be filed no later than 270 days after the notice of proposed adjustment in the case of a partnership that does not seek modification of the imputed underpayment).

Staff of J. Comm. on Tax'n, 114th Cong., General Explanation of Tax Legislation Enacted in 2015, at 75 n.247 (J. Comm. Print 2016). Although this publication is not legislative history, "like a law review article, may be relevant to the extent it is persuasive." *United States v. Woods*, 571 U.S. 31, 48 (2013).

[6] Taken together, sections 6231(b)(2) and 6235(a)(3) create a window of at least 60 days within which the Commissioner may mail an FPA.

(A) The date the period for requesting modification ends (including extensions) as described in § 301.6225-2(c)(3)(i) and (ii); or

(B) The date of the period for requesting modification expires as a result of a waiver of the prohibition on mailing a notice of final partnership adjustment (FPA) under § 301.6231-1(b)(2).

Under this regulation, if the partnership waives the period for requesting modification under section 6231(b)(2), then that waiver is deemed to be the submission of everything required to be submitted. Treas. Reg. § 301.6235-1(b)(2)(i)(B). Absent such a waiver, everything is deemed to have been submitted at the close of the 270-day period during which the partnership can request modification of an imputed underpayment. Treas. Reg. § 301.6235-1(b)(2)(A).

III.   *Timeliness of the JM Assets FPA*

We must decide whether the Commissioner timely mailed the FPA to JM Assets. The parties' positions can easily be summarized. JM Assets argues that the Commissioner could make his adjustment the later of 330 days after mailing the NOPPA or 270 days after it submitted everything required to be submitted to request modification of an imputed underpayment. For this proposition, JM Assets directs the Court to the text of section 6235(a). The Commissioner counters that the 270 days does not begin to run until the close of the period during which a modification request may be submitted. For this proposition, the Commissioner directs the Court to Treasury Regulation § 301.6235-1. To the extent the regulation the Commissioner relies on is inconsistent with the statute, JM Assets argues the regulation is invalid. We must consider the extent to which the Code and the regulation are in tension.

A.   *Code v. Regulation*

Section 6235(a) provides the period by which the Commissioner may make adjustments to a BBA partnership. Under section 6235(a), the period within which the Commissioner must make those adjustments is the latest of five possible dates: (1) three years after the date on which the partnership return was filed, I.R.C. § 6235(a)(1)(A); (2) three years after the due date of the return, I.R.C. § 6235(a)(1)(B); (3) three years after the date on which the partnership filed an administrative adjustment request under section 6227, I.R.C. § 6235(a)(1)(C); (4) in the case of a proposed partnership adjustment

under section 6231(a)(2), the date that is 330 days (plus any extension under 6225(c)(7)) after the date of such a notice, I.R.C. § 6235(a)(3); or (5) in the case of a modification request made pursuant to section 6225(c), 270 days (plus any extension under 6225(c)(7)) after the date on which everything required to be submitted to the Secretary pursuant to such section is so submitted, I.R.C. § 6235(a)(2).

Treasury Regulation § 301.6235-1(b)(2) interprets "the date on which everything required to be submitted" under section 6235(a)(2). As is relevant here, the regulation provides: "[T]he date on which everything required to be submitted to the IRS pursuant to section 6225(c) is so submitted is . . . [t]he date the period for requesting modification ends . . . ." Treas. Reg. § 301.6235-1(b)(2)(i)(A).

B.     *Regulation Validity*

"A regulation to be valid must be reasonable and must be consistent with law." *Int'l Ry. Co. v. Davidson*, 257 U.S. 506, 514 (1922). The Supreme Court has directed lower courts reviewing agency action to "exercise their independent judgment in deciding whether [the] agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). As the Supreme Court observed in *Loper Bright*, "statutes, no matter how impenetrable, do—in fact, must—have a single, best meaning. That is the whole point of having written statutes; 'every statute's meaning is fixed at the time of enactment.'" *Id.* at 2266 (quoting *Wis. Cent. Ltd. v. United States,* 585 U.S. 274, 284 (2018)).

As applied in this case, there is a direct conflict between the statute and the regulation on which the Commissioner relies. Section 6235(a)(2) provides the period for when the Commissioner can make an adjustment for a partnership in the event a modification request for the imputed underpayment is submitted to the Commissioner. The plain text of that statute states that date is "270 days . . . after the date" everything required for a complete modification request under section 6225(c) "is so submitted." I.R.C. § 6235(a)(2). The regulation interprets that date to be 270 days after "[t]he date the period for requesting modification ends." Treas. Reg. § 301.6235-1(b)(2)(i)(A). As is made evident in this case, those are different dates, and the regulation must give way to the statute.

Perhaps recognizing the tension between section 6235(a)(2) and the regulation interpreting that provision, the Commissioner directs the

Court to section 6225(c). He argues that section 6225(c)(1) provides the Commissioner with "broad authority to establish procedures with respect to modification under section 6225(c)" and that the definition in Treasury Regulation § 301.6235-1(b)(2) was promulgated pursuant to that authority. The Commissioner connects the limitations period under section 6235(a) to the "broad authority" under section 6225(c) by noting that section 6235(a)(2) explicitly references "everything required to be submitted" pursuant to section 6225(c). But even where Congress expressly delegates broad rulemaking authority, that authority does not extend to contradicting statutory text. *See Varian Med. Sys., Inc. & Subs. v. Commissioner*, 163 T.C. 76, 107 (2024).

The Commissioner argues that the 270-day modification window remains open unless the partnership submits Form 8981, which JM Assets did not submit. The Commissioner states the failure to submit Form 8981 communicates that the partnership may make additional submissions during the 270-day period under section 6225(c)(7). Therefore, whether everything that was required to be submitted was actually submitted could not be determined until the end of the modification period.

The Commissioner's argument ignores two of his own regulations. Form 8981 is a form used to waive the modification period. After the Commissioner mails a NOPPA, he must wait 270 days before he can mail an FPA. I.R.C. § 6231(b)(2)(A). But the partnership can elect to waive that waiting period. *Id.* By regulation, the Commissioner deems the waiver of that waiting period to also end the modification period. Treas. Reg. § 301.6235-1(b)(2)(i)(B). But nothing in the statute (or regulations) requires a waiver for a submission to be complete.

Factually, there is no genuine dispute that JM Assets submitted everything required to be submitted under section 6225(c) on February 14, 2023. That was the date JM Assets submitted Form 8980 to request modification of the imputed underpayment. At no time after that did JM Assets submit further information, nor did the Commissioner request additional information. And the Commissioner approved the modification request. Taken together, these facts establish that JM Assets submitted everything required to be submitted with its initial submission. Under section 6235(a)(2), the Commissioner had 270 days from receipt of that submission to issue an FPA. The date that is 270 days from February 14, 2023, is November 11, 2023, a Saturday. Thus the 270-day period lapsed on Monday, November 13, 2023. *See* I.R.C. § 7503. The FPA issued on December 1, 2023, was untimely.

IV.     *Commissioner's Out-of-Time Motions*

Belatedly, the Commissioner offers an alternative argument in the event the Court finds that the FPA was untimely. The Commissioner filed two Motions, one seeking leave to file an amendment to answer out of time and the other seeking to supplement his objection to JM Assets' pending Motion. Each of these documents seeks to add the same alternative argument, that the FPA is timely because of a substantial omission of income. Section 6235(c)(2) provides that, if there is a substantial omission of income as defined by section 6501(e)(1)(A), the three-year period to make a partnership adjustment under section 6235(a) is extended to six years. The Commissioner argues that JM Assets omitted income in excess of 25% of the gross income disclosed on its return, which would be a substantial omission of income under 6501(e)(1)(A).

When evaluating whether to grant a motion for leave to file a document such as a motion out of time, the Court may look to the merits of the underlying motion. *Bedrosian v. Commissioner*, 144 T.C. 152, 155 (2015). To do so we must consider the relative merits of the Commissioner's argument that JM Assets omitted income in excess of 25% of the amount reported on its 2018 return.

A.      *JM Assets' Reporting and the Commissioner's Adjustment*

JM Assets disclosed income from what it treated as installment sales on several Forms 6252 included with its 2018 return. Those forms detail the sale of five properties called "Kittyhawk," "Old Lockhart," "M 14.49ac 290W," "7ac US-1," and "FM 2978-51st-Summerfield." The forms include details showing how the installment sale income was calculated, including the selling prices of $88,000, $563,065, $1,453,000, $564,000, and $7,329,705, respectively. The NOPPA issued to JM Assets references the Forms 6252 and these selling prices. Further, the NOPPA states adjustments to the partnership's section 1231 gain was related to sales "on the 1065 for 2018 on the 6252." The section 1231 adjustment on the NOPPA was the same adjustment documented on the FPA.

B.      *Period of Limitations Under Section 6235(c)(2)*

Section 6235(c)(2) extends the period of limitations under section 6235(a) to make a partnership adjustment. The period of limitations is increased from three years to six years if "any partnership omits from gross income an amount properly includible therein and such amount is

described in subparagraph (A) or (C) of section 6501(e)(1)." I.R.C. § 6235(c)(2).

Section 6501 sets forth the rules limiting the time during which the amount of any tax can be assessed and collected. Section 6501(a) requires that the Commissioner assess tax within three years after the taxpayer's return is filed or deemed filed. *See Estate of Sanders v. Commissioner*, T.C. Memo. 2018-104, at *56, *supplementing* 144 T.C. 63 (2015). The three-year period of assessment is extended to six years in the case of a substantial omission of gross income under section 6501(e)(1)(A). *See Intermountain Ins. Serv. of Vail, LLC v. Commissioner*, 134 T.C. 211, 213 (2010), *supplementing* T.C. Memo. 2009-195, *rev'd and remanded*, 650 F.3d 691 (D.C. Cir. 2011), *vacated and remanded*, 566 U.S. 972 (2012). For the purposes of section 6501(e)(1)(A), an omission from gross income is "substantial" if it is "in excess of 25 percent of the amount of gross income stated in the return."

C.    *Substantial Omission of Income*

The test for whether there is a substantial omission of income under section 6501(e) may be expressed as a fraction where "the numerator is the amount properly includable gross income that was omitted from a taxpayer's return, and the denominator is 'the amount of gross income stated in the return.'" *Harlan v. Commissioner*, 116 T.C. 31, 40 (2001) (quoting I.R.C. § 6501(e)(1)(A)). To evaluate whether JM Assets has a substantial omission of income, we must further define the numerator and denominator.

An omission of income occurs when the face of the return does not provide a clue as to the existence of the omitted item, thus placing the Commissioner at a disadvantage in determining the accuracy of the return. *See Colony, Inc. v. Commissioner*, 357 U.S. 28, 36 (1958). The Supreme Court in *Colony* determined that the statutory purpose for extending the period of limitations is "to give the Commissioner additional time to review a taxpayer's return when the taxpayer had reported no information about a given transaction." *Barkett v. Commissioner*, 143 T.C. 149, 153 (2014). Under section 6501(e)(1)(B)(iii), any amount disclosed in the return, or in a statement attached to the return in a manner adequate to apprise the Secretary of the nature and amount of such item, is not considered omitted income. In contrast, where a taxpayer merely discloses net gain so that the Commissioner is not apprised of the nature, amount, or existence of gain, the amount is

not adequately disclosed. *Highwood Partners v. Commissioner*, 133 T.C. 1, 21–22 (2009).

The Commissioner contends JM Assets omitted income from its return in an amount in excess of 25% of its reported income. In the Commissioner's lodged First Amendment to Answer and First Supplement to Objection to Motion to Dismiss for Lack of Jurisdiction, the Commissioner argues that JM Assets omitted $5,499,437 which is 34% of $16,017,287. The Commissioner states the omitted gross income consists of "Schedule K, Net Section 1231 gains" that were described in the FPA.

JM Assets argues that its Forms 6252 adequately disclosed the income the Commissioner alleges is omitted. More specifically, it argues that, because the Commissioner was put on notice of the income, it cannot be considered omitted for the purposes of extending the period of limitations to six years under section 6501(e)(1)(A). We agree with JM Assets.

The income that the Commissioner identifies as omitted was disclosed in the return or in a statement attached to the return, and it is not treated as having been omitted. The alleged omission of income does not stem from a failure to report an accurate sale price, but rather it stems from an increase in section 1231 gain. In *Colony*, the Supreme Court held that understating gross income on an income tax return by misstating cost items or basis is not an "omi[ssion] from gross income [of] an amount properly includible therein" for the purposes of extending the period of limitations under section 275(c) of the 1939 Code (later reenacted as section 6501(e)(1)(A) in the 1954 Code). *Colony, Inc. v. Commissioner*, 357 U.S. at 36–37. The Supreme Court later extended the holding of *Colony* to section 6501(e)(1)(A) in *United States v. Home Concrete & Supply, LLC*, 566 U.S. 478, 490 (2012). That is the same provision to which Congress referred in section 6235(c)(2). Thus, the "clue test" of *Colony* applies with equal force to the BBA substantial omission of income rule. And under that test, JM Assets did not omit 25% of its income pursuant to section 6501(e)(1)(A).

Having concluded that the Commissioner would be unlikely to succeed on the new argument he seeks to add to the case, we return to the pending Motions for leave. The Commissioner's two Motions seek to add to this case the argument that JM Assets' return contained a substantial omission of income. That argument is supported neither by

the facts nor the law. Granting the Commissioner's Motions for Leave would be futile.

V. *Conclusion*

Section 6235(a)(2) allows the Commissioner to issue an FPA up to 270 days "after the date on which everything required to be submitted to the Secretary . . . is so submitted." JM Assets submitted everything required to be submitted on February 14, 2023. The period within which the Commissioner could issue an FPA lapsed on November 13, 2023. The Commissioner mailed the FPA after that date. It was untimely. The Commissioner's regulation, Treasury Regulation § 301.6235-1, as applied to these facts, is contrary to the Code.[7] Thus, we will deny the Commissioner's Motion for Partial Summary Judgment and grant JM Assets' recharacterized Motion for Summary Judgment.

Further, we will deny the Commissioner's Motions through which he seeks leave to add the alternative argument that the JM Assets return had a substantial omission of income. That argument is supported by neither the facts nor the law and would be futile.

To reflect the foregoing,

*An appropriate order and decision will be entered.*

Reviewed by the Court.

URDA, *C.J.*, and KERRIGAN, NEGA, PUGH, ASHFORD, COPELAND, JONES, TORO, GREAVES, MARSHALL, WEILER, WAY, LANDY, ARBEIT, GUIDER, JENKINS, and FUNG, *JJ.*, agree with this opinion of the Court.

---

[7] We express no view as to the application of this regulation to situations in which a partnership does not submit everything required to be submitted.